be inferred, that the captain had no funds, or means of making payment, at Porto Cabello; and as the parties all resided here, the adjustment was properly left to be made by themselves, after the return of the vessel.

I have discussed this case, as if the goods of the libellants had been sold. But it is proved, that the five-franc pieces passed as currency, and were money at Porto Cabello. If this makes any difference, it strengthens the claim, bringing it more directly within the case of Sims v. Willing, 8 Serg. & R. 103, and the remarks of the author in 2 Phil. Ins. (2d Ed.) p. 131.

All the authorities cited at the bar tend in some degree to sustain the positions above taken. In many of them, and particularly in the case of The Packet [Case No. 10,654], such taking of the property of a shipper is regarded as a forced loan. And surely as much compensation should be made by the law in case of a forced loan, as is ordinarily allowed when the lending has been voluntary. Judgment accordingly.

## Case No. 9,190.

### The MARY.

[1 Spr. 204.] [1]

District Court, D. Massachusetts. July, 1852.

SEAMEN'S WAGES — COASTING LICENSE — ILLEGAL VOYAGE—RIGHT TO RECOVER—KNOWLEDGE OF SHIP'S PAPERS.

1. Seamen on board of a small vessel, under a coasting license, employed in collecting and taking paving stones from Marshfield and Scituate beaches, and conveying them to Boston, the whole passage being within the ebb and flow of the tide, have a lien upon the vessel for their wages.

[Cited in The Buffalo, Case No. 2,111. Distinguished in Raft of Cypress Logs, Id. 11,527. Cited in The Minna, 11 Fed. 760.]

[See The Charles F. Perry, Case No. 2,616.]

2. If a vessel is engaged in the coasting trade, without a license, and that fact is not known to a seaman, it does not affect his right to wages. It is not incumbent upon a seaman to examine the vessel's papers, to see if the voyage be legal.

[Cited in The Norfolk, Case No. 10,297.]

This was a libel promoted by David Downing and others, of the crew of the schooner Mary, in a cause of subtraction of wages. It appeared that the vessel was employed in bringing paving-stones from Scituate and Marshfield beaches, to Boston, and the libellants were employed in loading the vessel with the stones, at the various places where they were obtained, navigating the vessel to Boston, and unloading her. The schooner had a coasting license, which expired on the 14th April, 1852; after which, and before the renewal of the license, she made one trip to Scituate. The claim of the libellants was for services on that trip. It was insisted in the defence, that the services of the libellants were not properly maritime, the compensation for which creates a lien upon the vessel; that the trip made after the expiration of the license, was illegal, and that no wages could be recovered for services on an illegal voyage.

H. C. Hutchins, for libellants.
R. H. Dana, Jr., for respondents.

SPRAGUE, District Judge. The first ground of defence is, that the services of the libellants were not maritime. In the supreme court of the United States, in the case of The Jefferson, 10 Wheat. [23 U. S.] 428, it was decided that the services must be rendered upon a vessel whose passages were upon the high seas, or within the ebb and flow of the tide. Judge Hopkinson, in the case of Thackarey v. The Farmer of Salem [Case No. 13,852], a vessel under fifty tons burden, the business of which consisted in going across the river, about two miles, for wood, the passage seldom occupying more than an hour, held that the admiralty had no jurisdiction. The same judge sustained the jurisdiction in the case of a vessel plying between Philadelphia and Smyrna, in Delaware, entirely a river navigation, but within the ebb and flow of the tide. Smith v. The Pekin [Id. 13,090]; Wilson v. The Ohio [Id. 17,825]. In Packard v. The Louisa [Id. 10,652] a small vessel carried stones from Quincy to Boston, and the men on board not only loaded and unloaded them, but assisted, also, in laying them into the wharves and other structures; and Judge Woodbury intimated that they had no lien upon the vessel. In my opinion, persons employed in navigating vessels, engaged in transporting goods upon tide-water, although within a harbor, are engaged in the maritime service, and have a lien upon the vessel for their wages, which may be enforced in the admiralty. If such service is merely incidental, and subsidiary to some other, as the quarrying of stone for the building of wharves, then the whole cannot be deemed maritime; but if the taking on board of the stones, and the discharging or laying them into the walls of the wharf, are merely incidental and subsidiary to the maritime employment of the vessel, then the whole contract service is maritime, and the suit thereon may be brought in the admiralty. In the present case, the vessel in her passage for the paving stones, went upon the high seas. After leaving the outer light, she was extra fauces terræ. While taking in her cargo, she was upon the high seas. It appeared, by the evidence, that the libellants were seamen, and that they signed shipping articles for a coasting voyage. Their contract, therefore, was maritime.

As to the objection of the illegality of the last trip or voyage, there is no evidence that the seamen were aware that the vessel had not the requisite papers. It is not incum-

[1] [Reported by F. E. Parker, Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]

bent on the mariner to examine the vessel's papers, or to see whether the master has done his duty. If it should appear that the seamen knew of the illegality of a voyage, it might bar his claim. Such is not the present case.

Decree for libellants.

See The Canton [Case No. 2,388]; McCormick v. Ives [Id. 8,720].

---

## Case No. 9,191.

### The MARY.

[1 Ware (454) 465; [1] 1 Law Rep. 157; 20 Am. Jur. 421.]

District Court, D. Maine. Aug. 18, 1838.

SEAMEN'S WAGES — WHEN TO BE PAID — CUSTOM OF PORT — PROVISIONS — SHORT ALLOWANCE— DOUBLE PAY—EQUIVALENTS—NAVY RATION.

1. A mariner is entitled to his wages as soon as he is voluntarily discharged from the vessel; and if not paid within ten days after his discharge he may have process from a court of admiralty against the vessel to enforce the payment.

[Cited in The Annie M. Smull, Case No. 423.]

2. Whether the seamen are bound to remain by the vessel after the voyage is ended and assist in discharging the cargo, depends on the custom of the port.

[Cited in Packard v. The Louisa, Case No. 10,652.]

3. If a vessel has not the quantity and kind of provisions required by the act of congress of July 20, 1790, § 9 [1 Stat. 135], and the crew are put on short allowance, they are entitled to double wages for every day that the short allowance is continued.

[Cited in The Childe Harold, Case No. 2,676; The John L. Dimmick, Id. 7,355; Foster v. Sampson, Id. 4,982; Collins v. Wheeler, Id. 3,018.]

4. But when the master is unable to obtain the kind of provision which the statute names, other kinds may be substituted as equivalents.

5. When the crew are put upon an allowance and there is a controversy whether it be short or not, the navy ration is assumed as the standard of a proper allowance.

This was a suit for subtraction of wages. The libel sets forth a contract for a voyage from Portland to Goree in Africa and the Cape de Verd Islands, and back to her port of discharge in the United States, for wages at the rate of eighteen dollars a month, alleges the faithful performance of the contract, and claims a balance due of $48.08. In another article the libellant claims extra wages in consequence of being put on short allowance of provisions for twenty-two days during the return voyage. The answer of the owner admits the contract, the service, and the balance due, as alleged in the libel, and avers that he is, and always has been ready to pay the sum, and brings the money into court, and alleges that the libellant has never demanded it. The answer denies that the crew was put on short allowance, and avers that they were at all times supplied

[1] [Reported by Hon. Ashur Ware, District Judge.]

with a sufficient quantity of good and wholesome provisions of the kind usually furnished in such voyages. The answer also contains an allegation that at the time when the libel was filed in court ten days had not elapsed since the discharge of the crew.

Mr. Haynes, for libellant.
Mr. Fox, for respondent.

WARE, District Judge. The first question raised by the pleadings in this case, in the natural order in which they present themselves, is whether the suit is prematurely instituted. The allegation of the answer, on this point, is incorrect in point of form, but if the facts bring the case within the exception it is susceptible of amendment. The statute does not prevent the filing of a libel before the expiration of ten days, but the issuing of process against the vessel. Whether this objection is available for the respondent upon the facts as they are proved, depends on the construction of the sixth section of the act of July 20, 1790, c. 56 [1 Story's Laws, 106; 1 Stat. 135, c. 29]. The particular clause fixing the time when admiralty process may be issued against the vessel, provided the wages are not paid, has been thought to be not of very easy interpretation. It is in these words: "As soon as the voyage is ended, and, the cargo or ballast fully discharged at the last port of delivery, every seaman or mariner shall be entitled to the wages which shall then be due according to his contract; and if such wages shall not be paid within ten days after such discharge, or if any dispute shall arise between the master and seamen, or mariners, touching the said wages, it shall be lawful," &c. And at the close of the section it is further provided, that nothing herein contained shall prevent any seaman or mariner from having or maintaining any action at common law, for the recovery of his wages, or from immediate process of any court having admiralty jurisdiction, wherever any vessel may be found, in case she shall have left the port of delivery where her voyage ended before payment of wages, or in case she shall be about to proceed to sea before the end of the ten days next after the delivery of her cargo or ballast.

One difficulty in the construction of the act, is supposed to arise from coupling the two phrases, "as soon as the voyage is ended," and "the cargo or ballast is fully discharged." The statute seems to have been framed upon the idea, either that these two phrases are identical in their meaning, the latter being added as merely exegetical of the former; or that by the principles of law, the seamen are bound to remain with the vessel until the cargo is fully discharged. But it is quite clear that in the maritime sense of the word, the voyage is ended when the vessel has arrived at her last port of destination, not always her last port of delivery, and is safely