CANSEY v. The SHARK. See Case No. 2,-526.

CANTER (UNITED STATES v.). See Case No. 14,719.

# Case No. 2,388.

## The CANTON.

[1 Spr. 437;[1] 21 Law Rep. 473.]

District Court, D. Massachusetts. Oct., 1858.

SEAMEN'S WAGES—LIEN—MARITIME SERVICE—LACHES.

1. Persons employed to load, navigate, and unload a vessel plying between Quincy and Boston, principally for the transportation of stone, she being licensed for the coasting trade, and being propelled by sails and the usual apparatus of a coaster, have a maritime lien upon such vessel for their wages.

[Applied in The May Queen, Case No. 9,-360. Cited in The Sarah Jane, Id. 12,349; The Norfolk, Id. 10,297. Distinguished in The Sarah E. Kennedy, 29 Fed. 266.]

[See note at end of case.]

2. Where the contract of service is for the navigation of tide waters, and laying stone in wharves is merely incidental and subsidiary to the principal business, the whole service may be maritime.

[Cited in The Charles F. Perry, Case No. 2,-616; The General Cass, Id. 5,307; Raft of Spars, Id. 11,527; The Artisan, Id. 568; The Champion, Id. 2,584; The Minna, 11 Fed. 760. Distinguished in The Ole Oleson, 20 Fed. 384.]

3. But if the navigation is merely incidental and subsidiary to some other business, which is not maritime, the contract, as a whole, will not be maritime.

4. A vessel's being sailed by the master, on shares, does not affect the lien of the seamen

[1] [Reported by F. E. Parker, Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]

for their wages. Their knowing that she was so sailed, makes no difference.

[Cited in The Galloway C. Morris, Case No. 5,204; The Montauk, Id. 9,717; The International, 30 Fed. 376; The L. L. Lamb, 31 Fed. 33.]

[See The Bambard, Case No. 831.]

5. The lien for wages is not lost by delay in enforcing it, where no third person has acquired any right to the vessel, and the owner has not been injured by the delay.

[Cited in The Helen M. Pierce, Case No. 6,332; The Sirocco, 7 Fed. 600.]

[See Holmes v. The Lodemia, Case No. 6,642; Freeman v. The Jane, Id. 5,086; The Dubuque, Id. 4,110; The Artisan, Id. 567; Anderson v. The Solon, Id. 363.]

In admiralty. This was a libel in rem, for wages earned on board of the sloop Canton, of thirty-five tons, during the summer of 1856. The answer alleged, 1st. That the libellants were not seamen, nor engaged in maritime service, and that no lien existed for their services; that the vessel was employed in freighting and laying stone in and about Boston, and between Quincy and Boston. 2d. That in accordance with the general custom at Quincy, this vessel was hired by the master, on shares, and that he victualled and manned her; that this fact was well known to the libellants when they were hired by him; and that this knowledge, coupled with the fact, that they received pay from time to time, from the master, was evidence that they trusted solely to the master for their pay, and so waived any lien that they might otherwise have had. 3d. That the claim was stale, and no lien could be enforced at this time. And in support of each of these grounds of defence, the claimants relied upon the case of Packard v. The Louisa [Case No. 10,652].

C. P. Curtis, Jr., for libellants.

H. F. Smith, for claimants.

SPRAGUE, District Judge. This is a libel in rem, for wages. The services are not denied; but the claimants, in the first place, contend that the employment of the libellants was not maritime in its nature; and this defence finds countenance in the case of Packard v. The Louisa [Case No. 10,652], which vessel was similarly employed. The only question actually decided in that case was, whether, after the expiration of three years, during which time the vessel had gone into the hands of bona fide purchasers, without notice of the claim, the lien could be enforced; and it was very clear that it could not. Whatever remarks may have been made upon other points, by the learned judge of the circuit court, were obiter dicta, not necessary to the decision of the case. Indeed, they were scarcely dicta, for the judge merely indicated the inclination of his mind, without expressing any decided conclusion upon the questions. I do not, therefore, regard them as binding authority upon this court.

There is another case, however, of more direct bearing,—Thackarey v. The Farmer [Id. 13,852],—in which Judge Hopkinson refused to issue process for wages against a vessel of forty-two tons, engaged in transporting fuel from Cooper's creek, across the Delaware river, to Philadelphia. The libel in that case alleged the services to have been rendered on the high seas; and that learned judge tried to draw a line of distinction, which should exclude small craft, engaged in local business, such as the transportation of fruit, provision, or fuel, on the Delaware, from admiralty jurisdiction. Some confusion seems to have existed in his mind, touching the necessity for the services being rendered on the high seas, in order to give a lien therefor. But it is clear, that services on tide-waters, or navigable rivers, may create a maritime lien. There are many decisions to this effect, and Judge Hopkinson himself has so held, in the case of a steamer plying between different ports on the Delaware river. Smith v. The Pekin [Case No. 13,090]. Now, this vessel, the Canton, was engaged in navigating tide-waters. She was enrolled and licensed for the coasting trade [which would not have been done had not the service contemplated been maritime in its nature].[2] The actual employment of the libellants was to load the vessel at Quincy, not as quarry-men, but to take the stone on board from a wharf, to navigate the vessel to Boston, and there to unload her. She carried stone principally; but she also carried lumber, and one cargo of lime. She was propelled by sails, and the other usual apparatus of a coaster, and the persons engaged on board of her must have been possessed of some skill in navigation. They must have been able to "hand, reef and steer," the ordinary test of seamanship. These duties the libellants performed. They must also have known the rules of navigation, for the avoidance of collision and had they, from want of skill, run afoul of another vessel, the owners of this sloop would have been responsible for the damage. I cannot hold that the libellants were only landsmen.

It is further urged, that, by the authority of the case of Thackarey v. The Farmer, in order to constitute the service on a river, maritime, and to give jurisdiction in admiralty, the vessel must be engaged in "commerce and trade." Judge Hopkinson does not extend this test to vessels employed on the high seas; and why that requisite should attach to vessels on one part of the water within the admiralty jurisdiction, and not to others, I am unable to perceive. A mere passenger vessel is not engaged in commerce or trade. A whaling voyage is only a hunting expedition. A vessel engaged in the exploration of the North seas, is not employed in commerce or trade, and yet, in each of these cases, the services of the seamen are cer-

---

[2] [From 21 Law Rep. 473.]

tainly maritime, and they have a lien therefor on the vessel.

The laying of stone in the building of wharves, it is argued, is not a maritime service. [This is true as an insulated service, but it may be so connected with and subservient to a far greater and more important contract that the whole may be deemed maritime].[2] And such service was performed by the libellants, in the case of Packard v. The Louisa, as well as in the present suit. The general rule, in regard to this, may be thus stated: If the contract is for the navigation of tide-waters, and laying stone in wharves, is merely incidental and subsidiary to the principal business, the whole service may be considered maritime. But if, on the contrary, the navigation is merely incidental and subsidiary to some other business, which is not maritime, of the owner or hirer of the vessel, such, for instance, as the transportation across a river, of the stone to be used by him in the construction of a building, upon which he is engaged. then the contract, as a whole, would not be maritime.

This vessel was engaged in transporting stone. an article of merchandize, on tidewaters. The master says, that eight or nine trips were occupied with freighting wharf stone, and in laying the wall of a wharf, for which the stone was intended, and that upon each of such trips an hour's delay was caused by laying the stone regularly, instead of unloading it, upon a wharf, in the usual manner. The master's book, however, shows but one such trip. But even though there had been nine, this was merely subsidiary to the principal business, and I do not think that such incidental employment for nine hours, in six months' service, can deprive that service of its maritime character. These stones were hoisted out of the vessel in the usual manner, and were lowered into the wall of the wharf. This is equivalent to an agreement by the crew of any other vessel, to pile up the cargo on the wharf, on arrival. It is only a variation of the method of unloading. I am, therefore, of opinion, that these libellants were engaged in a maritime service, and that they are entitled to come into this court to enforce their lien for such service.

2d. The second ground of defence cannot be maintained. Supposing the libellants to be seamen employed in maritime service, they have a lien on the vessel. whether she be sailed on shares or not. Their knowing that she was so sailed, can make no difference. Whoever is the owner, the seamen have the vessel as security, and they are not bound to heed arrangements made with third parties. [They always know that there is some owner, and behind that owner's liability, whether he be the general or special owner, they have the thing to look to for their wages].[2]

3d. There having been no change of ownership in the vessel, the position, that the lien has been lost, by delay in enforcing it, is untenable, as no innocent third party is injured. It has been urged, that a good practical limitation to these claims would be the time of settlement between the master and owners. This cannot be adopted as a [fixed][2] rule, because such settlement might be had at so early a period, as to give the seaman no reasonable opportunity to enforce his right. But if the seamen, knowing that the vessel had been taken by the master on shares, and that he ought to pay their wages, should permit an unreasonable time to elapse, after the termination of the season, without collecting their wages, or making known to the owners their claim, and the owners lulled into security by such neglect, should make a final settlement with the master, upon the supposition that the wages had been paid, and thereby lose the means of indemnifying themselves against the claim of the seamen, there would be much force in the suggestion. But, in this case, there has been no settlement, and no injustice can be done by the enforcement of the claim, at this time. A decree for the wages must be entered for the libellants. [A motion was made by the counsel for the claimants that the costs of the libellants be taxed according to the Statute of the United States of 1847, c. 55 [9 Stat. 181]; but the court ruled that the Statute of 1853, c. 80 [10 Stat. 161], regulating fees in United States courts, was inconsistent in this respect with the act of 1847].[2]

NOTE [from original report]. See The Mary [Case No. 9.190]; M'Cormick v. Ives [Id. 8,720]. As to the delay in enforcing the lien, see The Bolivar [Id. 1,609]; The Eastern Star [Id. 4,-254]. As to the lien for seamen's wages upon a ship sailed on shares, see Skolfield v. Potter [Id. 12,925]; Webb v. Pierce [Id. 17,320].

[NOTE. A service to be maritime must have some relation to commerce or navigation; some connection with a vessel employed in trade,—with her equipment, her preservation, or the preservation of her crew. Cope v. Vallette Dry-Dock Co., 16 Fed. 924, citing Thackarey v. Farmer of Salem. Case No. 13.852; The Hendrick Hudson, Id. 6.355. The employment must be in and about the safety and navigation of the vessel. Boon v. The Hornet, Id. 1,640.]