## Case No. 5,204.

### The GALLOWAY C. MORRIS.

[2 Abb. U. S. 164;[1] 7 Phila. 572; 3 Am. Law T. Rep. U. S. Cts. 137; 27 Leg. Int. 204; 2 Leg. Gaz. 201.]

Circuit Court, E. D. Pennsylvania. June 20, 1870.

J. W. Coulston, for appellant.
R. P. Kane, for respondent.

McKENNAN, Circuit Judge. By the settled principles of maritime law, mariners' wages are secured by a specific lien upon the ship and freight, and by the personal liability of the master and of the owner. Priority is given over all other liens, and they are treated with the most liberal favor. In The Mary [Case No. 9.186], Livingston, J., says:

---

[1] [Reported by Benjamin Vaughan Abbott, Esq., and here reprinted by permission.]

"Few claims are more highly favored and protected by law than those for seamen's wages. They are hardly earned, and liable to many contingencies, by which they may be entirely lost, without any fault on their part. When they become due, the vessel, owners, and master, are generally all responsible until satisfaction be obtained. The liability of a vessel for wages may be considered as the law of every commercial nation." They take precedence of bottomry bonds, and in the language of Sir William Scott, they are "sacred liens, and as long as a plank remains, the sailor is entitled as against all other persons to the proceeds as a security for his wages."

These are familiar principles of maritime law, and they are restated here only to indicate the footing of preference, on which claims like the one in suit are placed, and the indulgent liberality with which courts ought to deal with them.

The libelant in this case has proceeded in rem against the schooner Galloway C. Morris, to recover his wages, as cook and steward, during several coastwise voyages, beginning about January 28, 1868, and ending October 28, 1869, which were prosecuted under William Artis, as master. His service was continuous during the whole of the period within these dates, but he now claims his stipulated compensation for the time only when Artis was in command, allowing credit for different payments made to him.

The amount of his claim is but feebly contested, but his recovery is resisted on two grounds:—1. That he agreed to release the vessel and its owners, and look to the master alone for his compensation. 2. That his claim is stale, and its lien upon the vessel has therefore been lost.

Of the first defense, it is sufficient to say that it is without any foothold by which it can stand. It rests upon the assumed effect of a receipt given by the libelant to John Clendeniel, the ship's husband, on September 7, 1869. He was then entitled to forty-two dollars and fifty cents for current service on a single trip of the vessel, and although he then asserted his claim to a larger sum for arrears of wages, he was refused payment for what was confessedly due him, unless he "would sign a receipt in full against the schooner and her owners, and look to Captain Artis for the balance." Under such circumstances the receipt is good only for the sum actually paid to the libelant. A court of justice will not sanction or enforce a concession which has no other consideration than a refusal to pay a debt confessedly just and owing.

The second ground has been more earnestly pressed, and therefore demands a fuller notice. Staleness is not susceptible of a precise definition of uniform application. It is predicable of the peculiar circumstances of each particular case. It does not operate to discharge the debt, but to deny to the credit-

or the enforcement of some security or form of liability, which the law holds him to have lost by laches. Simple forbearance does not constitute it; but the reason on which it rests is, that the creditor has unreasonably delayed the collection of his debt, so that some special equity or interest would be injuriously affected by the allowance of his claim. Hence it is, that it has been generally, if not always, interposed to protect a purchaser of a vessel, or a person having a like equity, against the lien of debts previously existing, the collection of which had been so long delayed as to justify a presumption that they had been paid, or at least, that the privileged hypothecation of the vessel for their security had been waived. "If a claim of this kind be not seasonably prosecuted, and the vessel become the property of another for a fair consideration and without notice, it seems reasonable that those who have been negligent should suffer, and not an innocent purchaser. Some rule of this kind appears the more necessary in a case where it is so difficult, if not impossible, to ascertain either the existence or the extent of demands of this nature. But however reasonable such a rule may appear, none has yet been adopted, either in England or this country, which requires a seaman to assert his lien in any given time, or which will justify the court in saying, that if he does not proceed by libel the very first opportunity which is afforded him, he shall forfeit all right of obtaining satisfaction in that way, unless the vessel shall still belong to the same person." The Mary [supra]. And in The Bouvar [Case No. 1,609], Judge Betts says: "By the marine law there is no fixed period of time within which mariners must proceed to enforce their lien for wages; yet such lien will become extinct or barred by unreasonable delay, if the vessel passes into the hands of a bona fide purchaser ignorant of such a claim." 3 Kent, Comm. 196. Judge Ware remarks: "It is not doubted that a seaman may lose his lien by lying by for a length of time, and suffering the vessel to be sold to a person ignorant of his claim, without giving him notice." The Eastern Star [Case No. 4,254].

It is certainly in harmony with the doctrine of all the cases referred to, to hold that, in a case when the ownership of the vessel has not been changed, and no appreciable injury has resulted to the owner, forbearance by a seaman to demand and collect his wages, will not be attended by a loss of his specific remedy against the vessel.

In this case the beginning of the service for which the libelant seeks compensation, is not more than about twenty-one months before the filing of his libel, November 2, 1869, and this service was rendered in different voyages along the coast of the United States, down to October 28, 1869, when he was discharged. The ownership of the vessel was substantially unchanged, and

nearly every one of the libelant's voyages was begun or ended at Philadelphia, where the ship's ·husband and most of her owners resided, and the ship's papers were easily accessible to any of them. We are unable, under such circumstances, to say that the ·owners have any equity, which ought to subject the libelant to a forfeiture of his lien upon the vessel, and to the probable loss of his just wages, by reason of his pecuniary inability to pursue another remedy for them.

It is urged, however, that the ship was sailed on shares, and that the libelant's forbearance has operated injuriously to the owners. It is too well settled to admit of controversy, that the lien of seamen for their wages is not affected by a contract between the master and owners in reference to the sailing of the vessel. The Canton [Case No. 2,388]; Skolfield v. Potter [Id. 12,925]. The only aspect in which such a contract can be considered here, is as a reason for requiring greater promptitude on the part of the seaman in prosecuting his claim for wages, than it might otherwise be his duty to observe. Where, however, the owners had frequent ·opportunities, by examination of the ship's muniments, to ascertain the posture of the libelant's claim; where demand was actually made upon them for its payment a month before his discharge; where it does not appear that any settlement with the master, upon the supposition that these wages had been paid, was made, it is difficult to see how, in any aspect, such a contract can be used to affect the libelant.

In our judgment, the libelant is entitled to recover his wages, as stated in the schedule exhibited with his libel, to wit, five hundred and forty-nine dollars and seventeen cents, with interest from the filing thereof, and with his costs to be taxed, and a decree will accordingly be entered therefor.