MONTAGUE (JOBBINS v.). See Cases Nos. 7,329 and 7,330.

MONTAGUE, The G. H. See Case No. 5,377.

## Case No. 9,717.

### The MONTAUK.

[10 Ben. 455.] [1]

District Court, E. D. New York. May, 1879.

SEAMAN'S WAGES — VESSEL SAILED ON SHARES— KNOWLEDGE OF LIBELLANT.

1. The fact that the master of a vessel sails her "on shares" does not deprive a seaman hired by him of his lien on the vessel for his wages, unless it was also a part of the seaman's contract that his service was to be rendered on the personal credit of the master and not on the credit of the ship.

[Cited in The International, 30 Fed. 376.]

2. The fact that the seaman had knowledge of the master's agreement to sail the vessel on shares, does not raise any presumption that his own agreement was such as to destroy his lien.

[Cited in The L. L. Lamb, 31 Fed. 34.]

In admiralty.

S. B. Caldwell, for libellant.
H. H. Benjamin, for claimant.

BENEDICT, District Judge. This case comes before the court upon exceptions to the answer. The action is in rem to enforce a lien in behalf of a seaman for his wages. The answer admits that the libellant performed services as cook on board the vessel proceeded against, during the period charged in the libel, and that he was hired by the master of the vessel at the rate of wages stated in the libel.

The defence set up is, that during all the time the libellant served on board, the vessel was chartered by or let and hired to the master, and was entirely under the control and management of the master under a contract of charter or hiring made between the master and the owner of the vessel, whereby it was agreed that the vessel should be run, victualled and manned by the master on shares, all of which was known to the libellant.

It will be noticed that in this defence it is not averred that the libellant contracted to render the service in question upon the sole and personal credit of the master. The averment simply is that the vessel was sailed by the master on shares, and that the seaman knew that fact. These two facts do not constitute a defence to the action.

As I understand the law, an agreement between the master of a vessel and the owners thereof, whereby the vessel is to be sailed by the master on shares and be under the exclusive control and management of the master, although it may constitute the master owner, pro hac vice, and prevent him from binding the owner personally, does not deprive the master of the power to bind the vessel for the services of the crew, nor affect his contract with the seaman, unless it appears to be a part of such contract that the

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

service is to be rendered upon the personal credit of the master, and not upon the credit of the ship. In the absence of such an agreement by the seaman, the contract of the master for the service of the seaman on board the ship creates a lien thereon in favor of the seaman.

The fact that it is known to the seaman that the vessel is sailed by the master on shares by itself alone is not sufficient to raise a presumption that the seaman agreed for a personal credit. Hiring by the seaman upon the credit of the ship with knowledge of a contract between the master and the owner for the sailing of the vessel on shares, involves no inconsistency, because such a contract between the master and owner does not affect the master's power to bind the ship for the services of the crew. The master may undoubtedly so contract with a seaman as to deprive the seaman of a lien upon the ship, and the fact that the seaman knows that the vessel is to be run on shares is a material circumstance in an effort to show such to have been the contract; but the circumstance does not by itself prove the existence of such a contract nor warrant the conclusion that it was intended to waive a lien upon the ship.

This understanding of the law is supported by the following cases: Says Sprague, J.: "Supposing the libellants to be seamen employed in maritime service, they have a lien on the vessel whether she be sailed on shares or not. Their knowing that she was so sailed can make no difference." The Canton [Case No. 2,388].

Says McKeon, J.: "It is too well settled to admit of controversy that the lien of seamen for their wages is not affected by a contract between the master and owners in reference to the sailing of the vessel on shares." The Galloway C. Morris [Case No. 5,204].

Says Lowell, J.: "No case has ever yet decided that seamen hired by a charterer lose their lien." Flaherty v. Doane [Case No. 4,849]. See Skolfield v. Potter [Id. 12,925]; Webb v. Peirce [Id. 7,320].

The case of The Bambard [Case No. 831] proceeded upon this understanding of the law. In that case the libel was dismissed upon the ground that there were facts which showed that the agreement was to perform the service upon the personal credit of the master, and that the seaman had settled with the master upon that understanding of his agreement.

If it be the case, which I doubt, that a different understanding of the law from that indicated prevails in the Southern district of New York, the cases I have above referred to support the view which has hitherto prevailed in this district and show the weight of authority to be upon that side of the question.

This view of the case renders it unnecessary to consider the effect of section 4536 of the Revised Statutes of the United States. There must be a decree in favor of the libellant, for the amount claimed.