## THE INTERNATIONAL.

### BOYLAN v. THE INTERNATIONAL.

#### District Court, S. D. New York. March 25, 1887.

1. MARITIME LIENS—SEAMAN'S WAGES—CHARTERER IN POSSESSION.

A seaman's lien on the ship for his wages does not depend upon contract, but is fixed by the law as an incident to his lawful employment on board. He has the same lien, therefore, when employed by a known charterer, who runs the vessel on his own account, as when employed by the owner, though the latter is not personally liable when the vessel is run by the charterer.

2. SAME—CASE STATED—WAIVING LIEN—VOID CONTRACTS.

The respondent having chartered his vessel to a charterer for a fixed term, with the right to nominate the captain and engineer, who were to be paid by the charterer, named the libelant as engineer; and having explained to him fully the provisions of the charter, introduced him to the charterer, by whom he was employed. No express reference was made to the question of lien, though the libelant understood that the charterer was to be his paymaster. *Held,* (1) that the seaman had a lien for his wages, there being no implied contract renouncing it; and. *semble,* (2) that an express contract to that effect would be held void in admiralty unless there were some corresponding benefit to the seaman to sustain it.

In Admiralty.
*Hyland & Zabriskie,* for libelant.
*Charles Murray,* for claimant.

BROWN, J. The libelant sues to recover $38, a balance of wages claimed by him for services as engineer of the steam-lighter International, from May to November, 1883. The lighter during this time was run by one Ballou, under a charter to him executed by the owner, who, by written contract, had the right to name the engineer and captain; but all wages were to be paid by the charterer, who was to have possession, and run the boat on his own account. The owner nominated the libelant as engineer, and carefully read and explained to him the provisions of the charter, and thereupon introduced him to Ballou, by whom the libelant was employed. After six months, the charterer's business not being successful, the boat was surrendered to the owner, leaving some bills, including the above balance due to the engineer, unpaid. There were various other subsequent facts and circumstances, which I do not consider of material importance; since, upon the whole, it is sufficiently clear that neither the libelant nor the owner intended to waive or change their former legal rights or obligations. The only question is whether, under such circumstances, the engineer has a lien upon the vessel for his wages.

Had this been a question of materials or supplies furnished by a material-man having knowledge of the terms of the charter, no lien upon the vessel would here have been sustained, unless the supplies were furnished in a port of distress, and were necessary to enable the vessel to reach her owners, *i. e.,* unless the supplies were necessary to the ship

and her owners, and not merely to the charterer's business. *The Francis,* 21 Fed. Rep. 715, 721; *The Mary Morgan,* 28 Fed. Rep. 196; *The Norman,* Id. 383; *The Turgot,* 11 Prob. Div. 21, 23, 24.

This results, however, from the fact that in this country the general maritime law in reference to a lien for supplies has been only partially adopted, and that such a lien is admitted, not as the legal incident to the mere furnishing of supplies, but only upon special circumstances which it is incumbent upon the material-man to prove as conditions of his lien,—such, for instance, as the absence of the vessel from her home port; the absence of her owner from the place where the supplies are furnished, or, if present, his agreement to the lien; the ship's necessity for supplies; and the necessity of a credit to the vessel to obtain them. There are no such conditions applicable to a seaman's lien for wages. Our maritime law, as respects wages, conforms to the general law of the seas, which gives a seaman a lien upon the ship for his wages, as Cleirac says, "so long as a nail remains." His service is rendered primarily *to the ship;* and, in the view of the maritime law, the ship is primarily liable. The lien arises, therefore, as the legal incident of his service. It does not depend upon contract, (*The Minerva,* 1 Hagg. 352,) but is given by the general maritime law, whenever he is lawfully employed on board. Macl. Shipp. 248, 249.

In the various European codes that expressly recognize this lien, I find none that make any exception where the ship is in the possession of known charterers, by whom the seamen are employed. French Code Com. § 191, sub. 6; Netherlands Code Com. §§ 313, 451; Italian Code Com. §§ 674, 536; German Code Com. § 757; 1 Des Jardin, Droit Com. Mar. § 133. The Consulado, art. 289, in effect declares that the ship in such cases must make good her contracts, and the owner must look to the charterer for his indemnity.

In many cases this lien has been sustained against chartered vessels. *The Montauk,* 10 Ben. 455; *The Samuel Ober,* 15 Fed. Rep. 622; *The Artisan,* 9 Ben. 106; *Flaherty* v. *Doane,* 1 Low. 150; *The Canton,* 1 Spr. 437; *The G. C. Morris,* 2 Abb. 164, 168; *Hart* v. *The Enterprise,* 3 Wkly. Notes Cas. 172.

The libelant in this case understood that the charterer, and not the owner, was to be his pay-master. Undoubtedly, therefore, the owner was not personally liable, (*Scott* v. *Failes,* 5 Ben. 82;) but as the lien was the legal incident of the libelant's lawful employment upon the ship, and his employment by the charterer was authorized by the owner, his right as against the ship is unaffected. The testimony does not show that any special reference was made to this lien in his conversation with the owner, nor any express exemption of her liability agreed on. Such an exemption would not, therefore, be inferred. *The Montauk,* 10 Ben. 455. The precise question does not arise here as to what would have been the effect of an express contract waiving his lien, but such an agreement would be held void in courts of admiralty, unless made upon some corresponding benefit to him; because otherwise it is a stipulation highly injurious, depriving the seamen of the security which the law annexes

to their service as necessary to their due protection. Section 4535 of the Revised Statutes, as respects merchant seamen recognizes this general lien of seamen, and expressly declares that "no seaman shall, by any agreement other than is provided by this title, forfeit his lien upon the ship, or be deprived of any remedy for the recovery of his wages to which he would otherwise have been entitled." The British Merchants' Shipping Act, § 182, is to the same effect. Macl. Shipp. 249, 744. These provisions are in accordance with the principles of numerous decisions in the admiralty courts, as respects the invalidity of unusual and injurious stipulations in seamen's contracts. *The Sarah Jane,* Blatchf. & H. 401, 406–414; *The Minerva,* 1 Hagg. 352; *Harden* v. *Gordon,* 2 Mason, 541, 556; *Brown* v. *Lull,* 2 Sum. 449, 450; *The San Marcos,* 27 Fed. Rep. 567, 569; *The Highlander,* 1 Spr. 510; *The Sirocco,* 7 Fed. Rep. 599.

This rule, as respects the lien for seamen's wages, stands on the same footing, so far as respects a chartered vessel, as the lien of salvors, or of freighters, who have the same lien on a chartered ship as on one run by her owners, and whether they know of the charter or not. *The Cassius,* 2 Story, 93; *Webb* v. *Peirce,* 1 Curt. 107, 108; *The Phebe,* 1 Ware, 271; *The May Queen,* 1 Spr. 588, 591; *The T. A. Goddard,* 12 Fed. Rep. 174, 179; *Richardson* v. *Winsor,* 3 Cliff. 406.

An impression seems to have prevailed to some extent that a contrary rule, as respects chartered vessels, had been adopted in this district in reference to liens for wages; and this is, to some extent, sustained by a brief memorandum in a cause before my predecessor. Examination of the reported cases in this district fails to discover any adjudication on this subject, except that in the case of *The Fairplay,* 1 Blatchf. & H. 136, where the decision turned, however, on the necessity of an accounting in regard to an unliquidated adventure, not at all applicable here. The supposed rule was questioned by BENEDICT, J., in the case of *The Montauk, supra;* and, in view of the decisions to the contrary, by many eminent judges, in other districts, and considering that appeals to the circuit court cannot be taken in most of the causes for seamen's wages, I deem it incumbent upon me to adopt the rule prevailing elsewhere, as both in accord with my own judgment, and conducive to a most desirable, if not essential, harmony in our maritime law.

Decree for the libelant for $38, and interest, without costs.