## THE VIRGINIA BELLE.

(District Court, E. D. Virginia. March 21, 1913.)

1. SEAMEN (§ 2*)—WHO ARE "SEAMEN"—ENGINEER ON FISHING BOAT—LIEN FOR WAGES.

A libelant, who was employed as engineer of a motor boat, not registered, engaged in fishing in Chesapeake Bay, the business being conducted from a place on shore, where the crew remained nights, going out each morning, *held* entitled to a maritime lien as a seamen for his wages.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 1–3; Dec. Dig. § 2.*

For other definitions, see Words and Phrases, vol. 7, pp. 6374, 6375.]

2. ADMIRALTY (§ 6*)—JURISDICTION—VESSELS SUBJECT TO JURISDICTION.

A motor boat engaged in fishing, although of less than five tons and not registered, is subject to the admiralty jurisdiction.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 86–98; Dec. Dig. § 6.*]

3. SEAMEN (§ 27*)—EFFECT OF CONVEYANCE OF VESSEL.

A maritime lien for wages, promptly asserted, takes precedence of a sale and conveyance of the vessel in payment of a debt, made before the commencement of suit to enforce the lien, but after the lien accrued.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 4, 141, 157–169; Dec. Dig. § 27.*]

In Admiralty. Suit by Martin Jenkins against the sloop Virginia Belle to enforce a maritime lien for wages as a seaman. Decree for libelant.

The libel in this case was filed on the 15th day of July, 1912, to recover the sum of $170, $50 of which was claimed for supplies furnished the sloop, and $120 for services rendered by libelant as a seaman on the Virginia Belle, at $30 per month, from the 18th of January to the 18th of May, 1912. On the 17th of August a decree by default was entered for the libelant for the full sum claimed, to wit, $170, with interest from the 18th day of May, 1912, and costs, and the sloop ordered sold by the marshal for cash to the highest bidder, and the proceeds deposited in the registry of the court. On the 24th of August, 1912, E. Harry Rowe and Mrs. D. R. Craig respectively appeared and filed their answers, setting up that said Rowe, the owner of the Virginia Belle at the time libelant's services were rendered, had sold and disposed of the same to Mrs. D. R. Craig, along with other property, namely, the entire fishing outfit and plant, and also a tract of about four acres of land, at the price of $600, being the amount of the indebtedness theretofore due and owing by said Rowe to Mrs. Craig, as evidenced by a bill of sale for the property, dated on the 29th of June, 1912, and duly recorded in the clerk's office of Gloucester county on the 8th day of July, 1912, several days prior to the filing of the libel. Upon the presentation of these answers, treating them as intervening petitions, the following consent

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

order was entered on the 24th day of August, 1912: "* * * And from the said answers it appearing that they contest the right of the libelant to have the libel on sloop Virginia Belle, and as no bond has been given by above-named defendants and the said sloop Virginia Belle may injure and costs accumulate before the issue made between libelant and defendants can be heard and determined, now the court, by consent of parties, doth adjudge, order, and decree that the sale of the sloop Virginia Belle, advertised for sale on Tuesday, August 27, 1912, be proceeded with, and the proceeds of sale be held as directed by decree of sale of August 17, 1912, and so much of said order of sale as gave a judgment for libelant against sloop Virginia Belle be set aside, and the issue made between the libelant and parties defendant be heard and determined on 29th day of October, 1912." On the 27th of August, 1912, pursuant to advertisement, the marshal regularly sold the sloop at the price of $100, and deposited the money in the registry of the court.

Jeffries, Wolcott, Wolcott & Lankford, of Norfolk, Va., for libelant.
J. N. Stubbs, of Woods Crossroads, Va., for interveners.

WADDILL, District Judge (after stating the facts as above). The pleadings present for the consideration of the court the questions of (a) whether libelant has a maritime claim; (b) whether the sloop Virginia Belle is subject to the admiralty jurisdiction of the court; and (c) the effect of the bill of sale given for the sloop recorded prior to the filing of the libel. These questions will be considered in the order named.

[1] First. The $50 claimed as an advance for supplies by the libelant to the vessel having been abandoned, the residue of the claim of $120 will only be considered. That was due libelant for services rendered respondent in connection with the conduct of his fishing business, and for work as engineer on the Virginia Belle, used in the venture. The Virginia Belle was a gasoline motor boat, 38 feet long, under five tons burden, was not registered nor entered at the custom house, and used by the intervener, Rowe, for the purpose of fishing in the waters of Chesapeake Bay. She was three years old, said to be worth from $250 to $400, and cost, when new, the engine $450, and hull, etc., $200. The libelant was engaged as engineer of the boat, and assisted in fishing. The business was conducted from a place on the York river, in Gloucester county, known as Thoroughfare, at the mouth of Sarah's creek, and the fishermen stayed on shore at night, where the seines and nets were reeled, going out some 10 or 12 miles to the bay in the early morning to fish, and returning at night. The fishing crew consisted of four persons, other than Mr. Rowe, the master, owner of the Virginia Belle, and who, with the libelant as engineer, navigated the sloop.

On first impressions, it would appear that the libelant might be termed a fisherman, rather than a seaman, and hence not entitled to proceed in admiralty as for a maritime claim. But the maritime law treats persons engaged in fishing enterprises upon waters as seamen, and accords them the same rights, privileges, and remedies afforded seamen; and particularly is this true of one occupying the position of the libelant, namely, engineer of the boat used in the service. The Minna (D. C.) 11 Fed. 759, a decision of Judge Brown, of the Eastern district of Michigan, afterwards Mr. Justice Brown, of the Supreme

Court of the United States, is a case strikingly like the one under consideration; the facts in that case being as follows: The libel was for services performed as a fisherman on board the Minna. The testimony showed the Minna was employed solely in fishing, running out from Alpena every morning 15 or 18 miles to the fishing grounds, throwing their nets, and making a lift or catch of fish, and returning the same evening to port, where the fish were discharged and prepared for market. The crew consisted simply of the master and engineer. The libelant took no part in the navigation of the vessel, but was employed solely as a fisherman. His contract required him to go out with the tug every day, to stay and lift the nets, clean fish, discharge the catch, and return the nets on shore. He also lodged ashore at night. Mr. Justice Brown, in deciding the case, said:

"At first blush I was inclined to the opinion that libelant's services, not being maritime in their character, were not such as to create a lien upon the vessel. The earlier cases collated in 2 Parsons, Shipping, 185, indicate that mere landsmen have no lien, unless their labors contribute to the preservation or navigation of the ship, or to the sustenance or health of the crew. See, also, Gurney v. Crockett, Abb. Adm. 490, Fed. Cas. No. 5,874; Cox v. Murray, Abb. Adm. 340, Fed. Cas. No. 3,304. But, upon reflection, I am satisfied the sounder principle is that stated in Ben. Adm. § 241, and The Ocean Spray, 4 Sawy. 105, Fed. Cas. No. 10,412, viz., that all hands employed upon a vessel, except the master, are entitled to a lien if their services are in furtherance of the main object of the enterprise in which she is engaged. Any other rule would put large classes of persons employed upon steamboats outside the pale of admiralty law. * * * The test is whether the services are for the benefit of a vessel engaged in commerce and navigation. If there be a failure in either respect, viz., in the character or in the nature of the ship's employment, there is no lien. I do not regard the fact that libelant slept upon shore at night, and there reeled out and mended the nets, as qualifying in any way the nature of his contract. These services were merely incidental and subsidiary to his main contract. The Canton, 1 Spr. 437, Fed. Cas. No. 2,388; The Mary, 1 Spr. 204, Fed. Cas. No. 9,190. Upon the facts, I think that libelant is entitled to recover."

To this case, including those cited therein, and in the note at the foot of the decision, special reference is made as conclusive of the law of the present case. Indeed, if there was no decision other than that of Mr. Justice Brown, the same would be followed, as no higher authority can be found respecting maritime matters.

[2] Second. The claim that the libeled vessel is not the subject of maritime jurisdiction is not well taken, as the size of the vessel, or whether it was actually entered in the custom house, does not determine this question.

[3] Third. The claim of the libelant being maritime in character, as established by the proof, and the vessel sold, as above stated, for the purpose of meeting the same, the bill of sale, made in payment of the debt due by Mr. Rowe, along with the other property, will not operate to relieve the vessel from its maritime obligations, timely and appropriately asserted as in this case.

A decree will be entered in favor of the libelant for $120, the amount of his claim, together with his costs.