## Case No. 6,226.

### The HAVANA.

[1 Spr. 402;[1] 22 Law Rep. 150.]

District Court, D. Massachusetts. April, 1858.

ADMIRALTY JURISDICTION OF DISTRICT COURT — BRITISH VESSEL—LIEN OF MASTER FOR WAGES.

1. The district court may exercise jurisdiction against a British vessel, in favor of a British subject residing in the British dominions, but is not bound to do so.

[Cited in The Maggie Hammond, 9 Wall. (76 U. S.) 452. Followed in The Pawashick, Case No. 10,851. Cited in The Belgenland, 114 U. S. 364, 5 Sup. Ct. 864.]

2. By the maritime law, a master has no lien on his ship for his wages. By statute of 17 & 18 Vict. c. 104, such a lien is given to masters of British vessels.

[Cited in The Island City, Case No. 7,109; The Enterprise, Id. 4,498; Covert v. The Wexford, 3 Fed. 579.]

3. The lien so given may be enforced in the admiralty courts of the United States.

[Cited in Lorway v. Lousada, Case No. 8,517; The Maggie Hammond, 9 Wall. (76 U. S.) 450; The Becherdass Ambaidass, Case No. 1,203; Whitney v. The Mary Gratwick, Id. 17,591; The Trenton, 4 Fed. 662.]

[See The Bee, Case No. 1,219.]

[This was a libel in admiralty against the bark Havana, William Davidson, claimant, for wages due to the libellant as master of the vessel.]

J. Hardy Prince, for libellant.
Abraham Jackson, for claimant.

SPRAGUE, District Judge. This is a libel against a British vessel, by a British subject domiciled abroad. In such case, the court may exercise jurisdiction, but is not bound to do so. It will do so for the purposes of justice, and the more readily, if no objection be made by the consul of the nation to which the vessel belonged. This libel is by the master of a ship for his wages. In such case the maritime law gives no lien; but upon British vessels such a lien is created by the merchant shipping act, 17 & 18 Vict. c. 104. The question is whether this court should enforce this statute. It is to be observed that it creates not a mere remedy, but a right. It gives security; the lien is a jus in re, and should be enforced wherever the res may be found. Cases analogous to this have come before this and other courts of the United States. The maritime law gives no lien upon a domestic ship. Several of the states have by statutes given liens to material men, for supplies furnished to a vessel in her home port. In such case, the admiralty courts of the United States take jurisdiction, and enforce the right thus created by the state laws; and, being in its nature mari-

time, this is the same in principle as the case now before me. In those cases the courts recognize and enforce only the right created by the local laws,—not the remedy. In some cases, as in the first act of Massachusetts upon that subject, no process was provided, and the right was enforced only in this court; and when, as in the subsequent Massachusetts statutes, a remedy is given in the state tribunals, still this court applies its own remedy and mode of procedure. The circumstances of the present case illustrate the propriety of exercising jurisdiction to enforce the lien created by the act of parliament, which has been cited.

The ship arrived in Boston in September last, owned by a British subject living in St. John, New Brunswick. A creditor of the owner, also a British subject residing in St. John, where the debt also was contracted, came to Boston, obtained process from a state court, by which the vessel was attached, and he afterwards recovered judgment, and took out an execution, by virtue of which the ship was sold by the sheriff, and the creditor became the purchaser, and is now the claimant in this suit, contesting the right of the libellant. The master who brought this vessel to Boston, had commanded her for two years, at stated wages, and had a large amount due to him. He had, by the laws of his country, security upon his ship, on which he had a right to rely, and doubtless did rely, in giving so extended a credit to his owner, who has become insolvent. The courts of this country have sustained the application of a British creditor, who had no security upon the ship, and caused her to be arrested and sold for the payment of a debt existing only by virtue of British law. And now another British subject, having a higher and paramount right under the British law, appeals to a court in this country for a remedy. To refuse his application would be to sustain by our tribunals the inferior and subordinate claim of one British subject, and refuse the higher and paramount right of another. It would not only be doing injustice to the libellant, but a friendly nation might well complain of such a perversion of her law, by a partial administration of it. That the sale by the sheriff did not divest or impair the lien, has recently been decided in this court. Indeed, this point has not been raised by the intelligent counsel for the claimant in this case. The only remaining question is, for what sum a decree shall be rendered. The accounts of the libellant contain items to the amount of between four and five hundred dollars, which are disputed. As these, or some of them, may depend upon British law and usage, I shall invoke the aid of the British consul, by appointing him an assessor to ascertain what amount thereof, if any, should be allowed.

[1] [Reported by F. E. Parker, Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]