COVERT and others *v.* THE BRITISH BRIG WEXFORD, etc.

*(District Court, S. D. New York.* August 21, 1880.)

1. EXTRA WAGES—LIEN—17 AND 18 VICT. *c.* 104, § 187.—Section 187 of the British Merchant Shipping Act (17 and 18 Vict. *c.* 104) provides that when a master or owner, without sufficient cause, refuses or neglects to pay the wages of seamen within the time fixed by statute, he shall pay them a sum not exceeding the amount of two days' pay for each of the days, not exceeding ten days, during which payment is so delayed. *Held,* that such extra pay is to be treated as wages, for which the seamen have a lien in all respects like that for their stipulated wages.

2. MASTER—WAGES—LIEN—17 AND 18 VICT. *c.* 104, § 197.—Section 197 of the British Merchant Shipping Act (17 and 18 Vict. *c.* 104) provides that " the master of every ship shall, so far as the case permits, have the same rights, liens, and remedies for the recovery of his wages which, by this act, or by any law or custom, any seaman not being a master has for the recovery of his wages." *Held,* that this statute gives the master a lien on the vessel for his wages enforceable in the admiralty courts of this country, although, by the maratime law, the master has no lien, and although the lien is given by a foreign statute.

    *The Havana,* 1 Sprague, 402.
    *The Enterprise,* 1 Law. 455.

3. SAME—SAME—SAME.—He may, however, have waived or subordinated his lien by contracts with material men or parties furnishing supplies, and it does not, therefore, necessarily follow, as in the case of the seamen, that his lien will have priority over that which may be established by other claimants.

    *The Selah,* 4 Sawy. 40.

4. JURISDICTION—FOREIGN SEAMEN—FOREIGN VESSEL.—Although it is discretionary with the court to entertain jurisdiction of a claim of foreign seamen against a foreign vessel, it cannot refuse, where it has seized and sold such vessel under its process, to distribute the proceeds according to the rights of the respective parties who appear to claim them.

In Admiralty.

*J. A. Deady,* for libellants.

*F. A. Wilcox,* for other parties.

CHOATE, D. J. This is a libel by the master and seamen of a British vessel for balance of wages due upon the termination of the voyage, which ended in this port. The libellants also claim extra wages under section 187 of the British

merchant shipping act, (17 and 18 Vict. *c*. 104,) which provides that when the master or owner, without sufficient cause, refuses or neglects to pay the wages of the seamen within the time fixed by the statute, which, as applicable to this vessel, was within five days after their discharge, he shall pay them a sum not exceeding the amount of two days' pay for each of the days, not exceeding 10 days, during which payment is so delayed. The vessel has been sold under a decree of the court, and the proceeds, amounting to $2,075, have been paid into the registry of the court. Various parties have appeared, claiming liens on the vessel for materials and supplies. The amounts due them have not been adjusted, but the fund in court is insufficient to pay in full the seamen, the master, and these other parties, if their claims shall be established. A mortgagee has also appeared as claimant of the surplus proceeds of the vessel. The amount due the seamen for wages and extra pay, is not contested, but it is objected, on behalf of the mortgagee and the other parties who have presented their claims, that the seamen have no lien for their extra pay, and that the master has no lien for his wages; or, at any rate, that he has not a prior lien to that of those who have furnished materials and supplies.

I think the extra pay due to the seamen is to be treated as wages, for which they have a prior lien on the vessel. The statute provides that it shall be recovered as wages. This clearly means by the same methods or modes of procedure. The customary mode of recovering wages is by libelling the ship. The language, therefore, necessarily implied that the ship is holden for this extra pay. And, aside from this particular language of the statute, I think that, from the nature of the provision, and the purposes it was intended to subserve, the extra pay may be properly regarded as an addition or increase of wages in the event of the neglect of the master or owner to provide for their prompt payment. We have a similar provision in our own act. These statutes are designed for the protection of seamen; to prevent the abuse of withholding their pay, and thereby keeping them in port at expense and out of employment while waiting for a settlement. It

is a liquidated indemnity for such enforced expense and delay. It is limited to ten days, perhaps upon the theory that the summary powers of the admiralty courts, everywhere exercised for the protection of seamen, can, within that time, be brought to bear for their relief, and to encourage diligence on their part in presenting and prosecuting their claims. These protective statutes would be of little or no value to the seamen if they do not give them a lien on the vessel. A mere right to enforce a personal claim for such small sums against the master or owner would generally be of no value to them. And, if they have a lien, it must, I think, be presumed that it was intended to be a lien in all respects like that for their stipulated wages—one equally beneficial to them. The contract with the seamen is to be deemed made with reference to the existing law governing the ship, which, in this case, is the British law, and the right to the extra pay must be deemed secured to them by the contract itself. The wages must be deemed by the contract to be agreed upon as this much more in case of delay in payment. There must therefore be a decree for the seamen for their wages and extra pay, with costs, payable at once, in preference to all other claims.

The master's claim of a lien for his wages arises under the one hundred and ninety-first section of the same act, which provides that "the master of every ship shall, so far as the case permits, have the same rights, liens, and remedies for the recovery of his wages which, by this act, or by any law or custom, any seaman not being a master has for the recovery of his wages." It has been held that this statute gives the master a lien on the vessel for his wages enforceable in the admiralty courts of this country, although, by the maritime law, the master has no lien, and although the lien is given by a foreign statute. *The Havana,* 1 Sprague, 402; *The Enterprise,* 1 Low. 455. I see no reason to doubt the correctness of these rulings. The contract with the master is made with reference to the statute, and the lien or interest in the vessel is thereby given to him as part of the consideration for his service. It is immaterial that the lien is not *created* by the maritime law. The admiralty courts enforce liens

created by statute or by agreement, and thereby annexed or made part of a maritime contract.

It is suggested that it is discretionary with the court to entertain jurisdiction of a claim of foreign seamen against a foreign vessel. This is so. But the question here is not whether the court will take jurisdiction over this vessel. It has already done so, and seized and sold her under its process. It cannot refuse now to distribute the proceeds according to the rights of the respective parties who appear to claim them. While, therefore, the master must be held to have a lien for his wages which can be enforced against the vessel or its proceeds in this court, it does not follow, as in the case of the seamen, that his lien will have priority over that which may be established by other claimants. He may by his contracts with material men, or parties furnishing supplies, have waived his lien in their favor, or made it subordinate to theirs. In the case of *The Selah,* 4 Sawy. 40, it was held that a foreign master did so by contracting with such parties on the credit of the ship in an American port. The claims of these other parties have not yet been proved, nor until they are adjusted, and the nature of them and the circumstances under which they arose shall be understood, can it be determined what are their rights in respect to priority of lien relatively to the claim of the master. The master is, therefore, entitled to a decree for his wages, reserving all questions of priority of payment and of distribution till all the claims made have been adjusted. The question, also, whether the master is entitled to extra pay as a seaman is also reserved. If the prior liens are sustained it is immaterial.

Decree accordingly.