## WHITE *v.* THE EMMA.

*(Circuit Court, E. D. Louisiana. January, 1889.)*

**MARITIME LIENS—SERVICES.**
> Libelant was employed by the owner of a boat to run it for her. He did not act in any particular capacity, but performed all kinds of services, sometimes hunting up business for the owner, and doing work not connected with the management of the boat. There was no contract as to how much he should be paid for his services. *Held,* that he did not have a lien on the boat for such services, as it was evident that he relied upon the credit of the owner for his pay.

In Admiralty. On appeal from district court.
*T. M. Gill,* for libelant.
*Miller & Finney,* for claimants.

PARDEE, J. Libel *in rem* for services as pilot and general mariner on board the tug Emma from on or about December 25, 1886, to on or about November 15, 1887. The steam-tug Emma is a vessel of three and three-quarter tons. The libelant's testimony is substantially as follows:

"I am a steam-boat man,—a pilot and carpenter. On the 25th of December, 1886, I was employed by Miss Theresa Mooney to go to the mouth of Little river, near the mouth of Black river, to recover the steam-tug Emma. I was to go and get it, overhaul it, repair it, and run it for her. I went up to make arrangements to buy her, and that night, when I was there, and made arrangements to buy her, she thawed out, her water-pipe burst, and she sank, —that was after I had made arrangements to buy her at a certain price, she sank,—and we had to haul her up on the bank. I did it with what assistance I could get there. After raising her, I found the rudder was broken. After getting up steam and repairing her, I had to overhaul her machinery. I did it with the assistance of a blacksmith. I then brought her over here at Freetown, in the port of New Orleans, just across the river. There we hauled her on the ways, and I helped to overhaul the engines. The painting I did all myself. After getting through with that, I took her to Bayou Sara, and I done very well. I was there one week, and I cleared sixty-five dollars, or something in that neighborhood. On the Sunday night after that she took fire, after I had been there a week; and through some of my friends, four or five of them, (it was late at night,) and myself, we saved the hull. The next

day I shoveled the cinders out of her, and overhauled the machinery again, and brought her back to Freetown, or McDonoughville, in this port of New Orleans. Here we hauled her on the ways again, and we rebuilt her again. After rebuilding her again, we took her to Donaldsonville, and we ran her there three or four weeks. I then brought the boat down to the port of New Orleans and McDonoughville, and laid her up for some time. After that there came a storm,—I think it was in August or September,—and on that day she came near going, too; but, through the exertions of myself and friends, we saved her. And Miss Mooney sent down that day to find if I was there to take care of her boat, and she found that I was there, and did save her. I got a tug to pump the water out of her. After the storm, I got her all right, and took her over the river. During all this time, I acted in the capacity, and was deckhand, engineer, pilot, head cook, carpenter, painter, or anything you want to call it; I done it all. My services continued up to about the neighborhood of the 10th of December; I don't say exactly. They were worth fifty dollars a month. During part of the time I worked under Miss Mooney's directions, on the ferry-boat Jerome Hanley,—about two weeks, I should think. Under the directions of Miss Mooney, I went all around town to see if I could find work for her; and further, under her directions, I helped her to sell the boat to the claimants. I represented to the claimants the condition of the boat. I did not represent to them that she was in debt. After I left the service of Miss Mooney, I saw the claimants' agent,—met him on the street. He said to me, 'That boat was in debt.' That was about the 15th or 17th of December, 1887. He said that boat was in debt, and I told him I knew that. That is the first he ever said about it. I remarked to him at the time that I thought the lady was responsible for all she owed. I never told him before nor after the sale that I had a claim upon the boat for services."

There is some evidence in the case which contradicts the libelant in some particulars; but, in my opinion, it is not necessary to consider it. The libelant's deposition may be taken as his case, and consideration of it shows that he was acting as the general agent and servant of Miss Mooney in all his transactions with regard to this steam-tug, and was relying upon her faith and credit for his pay, and not in any way upon any maritime lien upon the tug. I am clear that from his services no maritime lien resulted. According to his own statement, his services were of all kinds; he was master, crew, ship's husband. He had no contract fixing the amount he was to be paid. He was sometimes employed with the tug; sometimes off from the tug; sometimes in the city of New Orleans, hunting up business; and sometimes a mere watchman. Without regarding the question as to whether or not he could be estopped by his silence at the time of the sale from claiming a maritime lien, it is sufficient, to dispose of the case, that he had no lien. A decree will be entered dismissing the libel, with costs of both courts.