THE GEN. J. A. DUMONT.

(District Court, E. D. Virginia.  December 17, 1907.)

1. MARITIME LIENS—REPAIRS ORDERED BY CHARTERER—PROVISIONS OF CHARTER PARTY.

A steamer owned by a nonresident was chartered for a number of months by a corporation and used to carry passengers between Norfolk and the Jamestown Exposition. The charter party required the charterer to make all repairs and to return the vessel in as good condition as when received. During such time libelant, doing business in Norfolk, made repairs on the vessel on order of the charterer, having knowledge that it was not the owner and being chargeable with such knowledge as proper inquiry would have disclosed as to the terms of the charter. The evidence, moreover, indicated that credit was given to the charterer and not to the vessel. *Held*, that libelant was not entitled to a lien for such repairs.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Maritime Liens, §§ 5, 12.]

2. SEAMEN—LIEN FOR WAGES—EFFECT OF PROVISIONS OF CHARTER PARTY.

The provisions of a charter party cannot deprive a seaman of his right to a lien on the vessel for his wages.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Seamen, §§ 157–164.]

In Admiralty. Libel to recover for repairs to chartered vessel.

E. R. Baird, Jr., for libelant.

W. Leigh Williams and Foster & Foster, for respondent.

WADDILL, District Judge. The steamer Gen. J. A. Dumont, owned by the claimant, Edward B. Booz, of Baltimore, admitted to be a foreign steamer, and whose home port is presumably Baltimore, was on the 16th day of October, 1906, chartered to the Jamestown Exposition Excursion & Steamboat Company, a corporation existing under the laws of the state of New Jersey, doing business at the city of Norfolk, Va., familiarly known as the "Water Belt Line," for a period of seven months from the 1st day of May to the 30th day of November, 1907, to be used on the waters of Elizabeth river, Hampton Roads, and vicinity as a passenger steamer between the city of Norfolk and the Jamestown Exposition grounds. While under such charter certain repairs were made upon the steamer by the libelant at the instance of the charterer, to recover the cost of which, namely, $808.91, the libel was filed. The owner of the Dumont resists payment on the ground that the charterer ordered the work done, and was solely responsible therefor under the terms of the charter party.

The provisions of the charter party bearing upon the issues raised are, in substance, that the charterer should pay all expenses of operation, crew hire, coal bills, office expense, victualing, and such other matters as might be necessary to the operation of the Dumont, and

that no expense of any character whatsoever should be chargeable to the owner of the Dumont; that all bills should be contracted in the name of the charterer, who further agreed to assume all risk of damage or loss from any cause whatsoever, to make all repairs necessary to keep said steamboat in good running order during the term of the charter, and at the expiration thereof to deliver the Dumont to her owner in Baltimore in as good condition as when received, ordinary wear and tear excepted, free from all bills, liens, or incumbrances of any nature whatsoever, the charterer agreeing to pay for any repairs necessary to place the Dumont in the condition she was when delivered to it; and the charterer, as a condition precedent to the delivery of said Dumont, was also required to give bond to the owner thereof in the sum of $5,000, conditioned for the faithful performance of all the terms, clauses, conditions, and covenants contained in the charter party.

After a careful review of all the evidence in the case, the conclusion reached by the court is that the libelant is not entitled to recover. It is quite clear from the evidence that the work done on the Dumont was ordered neither by her owner, nor the master or other officer of the vessel, nor agent of the owner authorized to charge the same, but by the charterer. While it is true the owner seems to have known that work was being done, and at intervals his representatives were present at the shipyard, still they were not so connected with the work as to impose liability therefor on their principal. The libelant knew that the company operating the steamer was not its owner, and either knew or was put upon inquiry as to the interests and relation of the charterer, the Jamestown Exposition Excursion & Steamboat Company, to the Dumont, and is chargeable with such knowledge as diligent inquiry would have elicited. Had it done this, it would easily have discovered the conditions under which the steamer was operated, and that the charterer, and not the owner, nor the vessel, was responsible for repairs such as libelant made.

Moreover, the lien upon the vessel cannot be sustained in this case. The repairs were made at the port of Norfolk, the home of the libelant, and where the Dumont was being operated by the charterer in local service that lasted for some months, the charterer being engaged in the conduct of what was supposed and believed would be a large and lucrative business, namely, transporting passengers between the city of Norfolk and the Jamestown Exposition; and it is quite apparent that in this particular transaction the dealing was with the charterer, the owner pro hac vice of the vessel, in person, and that the credit was not given or extended on account either of the owner or of the vessel, but to the charterer individually. Assuming, however, the authority of the charterer to charge the vessel, which as a matter of fact did not exist in this case, nothing was suggested indicative of a purpose so to do, and prima facie the credit was given upon the charterer's credit, as distinguished from that of the vessel or her owners, under the facts and circumstances of this case. The Æronaut (D. C.) 36 Fed. 497; The Samuel Marshall (D. C.) 49 Fed. 757.

The facts applicable to the claims of the several petitioners are not in all respects the same as those of the libelant; but they are so essentially, in so far as their right of recovery against the Dumont is con-

cerned. They either knew or were placed upon inquiry as to the existence or nonexistence of the charter party in question, which inquiry they failed to make, and, moreover, should be held under the facts and circumstances of this case to have extended credit upon the faith of the charterer, with whom they contracted, rather than upon that either of the vessel or her owner. This case, with the exception of the claim for seaman's wages, is completely covered and controlled by the comparatively recent decisions of the Supreme Court of the United States of The Kate, 164 U. S. 458, 462, 464, 17 Sup. Ct. 135, 41 L. Ed. 512, and The Valencia, 165 U. S. 264, 271, 272, 17 Sup. Ct. 323, 41 L. Ed. 710; and under them the libelant, as well as the several petitioners other than the seaman, who have intervened herein, cannot recover.

The seaman is entitled to a lien upon the Dumont for the amount of his wages, and should not be deprived of the same, or denied the right of recovery against her, because of any provisions contained in the charter party. The claim is for labor performed in the ship's navigation, and the maritime lien in his favor is given by law, based upon the necessity of the service thus rendered by one of this class, favored by law because of the hazards they encounter and hardships they endure in the interest of the ship and her owners and the furtherance of commerce. The Fanny Gardner, Fed. Cas. No. 4,642; Flaherty v. Doane, Fed. Cas. No. 4,849; The Samuel Ober (D. C.) 15 Fed. 621; The International (D. C.) 30 Fed. 375; The Atlantic (D. C.) 53 Fed. 607.

A decree may be entered accordingly, dismissing the libel and petitions, except the petition of George Hoffert for wages, for which a decree should be entered.