CURACAO TRADING CO. (Curacaosche Handel Maatschappij) v. BJORGE
et al.

THE CRATHEUS.

(Circuit Court of Appeals, Fifth Circuit.  March 17, 1920.)

No. 3447.

MARITIME LIENS ⬤�top28—VESSEL NOT SUBJECT TO LIEN FOR COAL FURNISHED TO
 TIME CHARTERER.

 A steamship, under time charter requiring charterers to furnish and pay
 for coal and containing no provision respecting their subjecting the vessel
 to liens, *held* not subject to lien under Act June 23, 1910 (Comp. St. §§
 7783–7787), for coal furnished in a foreign port on the order and credit of
 charterer under a prior contract with the furnisher, assuming that the
 statute applies.

Appeal from the District Court of the United States for the Eastern
District of Louisiana; Rufus E. Foster, Judge.

Suit by the Curacao Trading Company (Curacaosche Handel Maats-
chappij) against Carl Bjorge, master and claimant of the steamship
Cratheus and others.  Decree for respondents, and libelant appeals.
Affirmed.

Joseph W. Montgomery and Walter Suthon, Jr., both of New Or-
leans, La. (Hall, Monroe & Lemann, of New Orleans, La., on the
brief), for appellant.

Geo. H. Terriberry, of New Orleans, La. (Terriberry, Rice & Young,
of New Orleans, La., on the brief), for appellees.

Before WALKER, Circuit Judge, and GRUBB and CALL, District
Judges.

WALKER, Circuit Judge.  The appellant, the libelant below, com-
plains of the refusal of the court to decree against the steamship
Cratheus the price of coal furnished for its use in December, 1917, at
Curacao, Dutch West Indies, under the following circumstances:

The ship was being operated under a time charter made by its owner
to George S. Taylor & Co.  The libelant was under written contract
with the charterers to furnish "all the bunker coal required by them
at Curacao, D. W. I., for steamers of which they are owners, charter-
ers, or time charterers, or in which they are otherwise interested."  On
the arrival of the ship at Curacao a representative of the libelant came
aboard, stated to the master that they had the bunkering of the ship
according to contract with George S. Taylor & Co., and that they would
supply the bunkers sufficient to take the ship to Rio, and had the master
telegraph to the charterers, stating how many tons of bunkers he would
take, and asking the charterers to arrange for payment of same.  In
reply the charterers telegraphed that they would pay for the bunkers
the ship received at Curacao.  Thereupon the libelant furnished the
number of tons of coal the master stated he could take on board, and
received from the master his draft, payable 30 days after sight, on the

⬤⟤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

charterers, for the contract price, which draft was duly accepted by the charterers, but was not paid.

The libelant's representative testified that the coal was furnished on the order and credit of the charterers, that he knew that under the charter the charterers had to pay for the coal, but that he had the idea that the boat was responsible for it, and that the master told him the vessel was chartered; "but I don't remember he told me it was on time charter; perhaps he told me, but I do not remember." The master testified that he mentioned to the libelant's representative that Taylor & Co. were time charterers; that he had a copy of the charter party on board, and no representative of the appellant asked to see it. Under the charter party, which was for 12 months, commencing in March, 1917, the owner employed and paid the officers and crew, and the charterers were to provide and pay for all coal. That instrument contained nothing on the subject of the charterers creating or discharging liens on the vessel.

It is not claimed that under the law as it was before the enactment of the Act of June 23, 1910, "relating to liens on vessels for repairs, supplies, or other necessaries" (36 Stat. 604 [Comp. St. §§ 7783–7787]), the coal was so furnished as to give a lien on the vessel. Assuming, without deciding, that that statute is applicable to the transaction in question, we are not of opinion that the furnisher acquired the lien claimed. According to the evidence it was not procured by the master, or by any one authorized to bind the vessel therefor, but was procured by and furnished to the charterers on their order and credit. So far as appears, the master had nothing to do with getting the coal, except that, under directions from the charterers, of which the appellant was informed, he told the appellant how many tons were required. The statute does not create a presumption that a charterer, unless he is also either the "ship's husband, master or a person to whom the management of the vessel at the port of supply is intrusted," has authority from the owner to procure repairs, supplies, or other necessaries for the vessel. No lien on a vessel is given for supplies procured by one having no such relations to it that, under the terms of the statute, he is presumed to have authority from the owner to procure supplies.

The provision that "nothing in this act shall be construed to confer a lien when the furnisher knew, or by the exercise of reasonable diligence could have ascertained, that because of the terms of the charter party, agreement for sale of the vessel, or for any other reason, the person ordering the repairs, supplies or other necessaries was without authority to bind the vessel therefor," presupposes that the person procuring the repairs, etc., is one who, under a preceding provision of the statute, is to be presumed to have authority from the owner. The coal was not procured by any one having either actual or presumed authority to bind the owner. Furthermore, circumstances either known to the appellant or which it easily could have ascertained made it apparent that it was not to be expected that the owner, or the master for it, would be concerned about the vessel being supplied with the coal required to enable it to proceed on its voyage. The vessel being

under a time charter having several months to run, the hire would not stop while it was waiting at Curacao for lack of coal.

There are material differences between the facts of the instant case and those of the case of South Coast S. S. Co., Claimant, v. Rudbach (March 1, 1920) 251 U. S. 519, 40 Sup. Ct. 233, 64 L. Ed. ——. In the case cited the supplies were furnished to the ship on the order of its master under authority given by the charterers, and the charter party recognized that liens might be imposed by the charterers. In the instant case the coal was ordered, not by the master, but by the charterers, who were not expressly or impliedly given authority to subject the vessel to liens for supplies. The case cited is not authority for the proposition that a vessel may be subjected to a lien for the price or value of supplies furnished to a charterer who is without authority to bind the vessel or its owner therefor. The coal now in question having been procured, not by any one having authority to bind the vessel for it, but by the charterers, who, under the terms of the charter party, were, as the furnisher understood, required to pay for such supplies, it is not material that the furnisher thought that the vessel was responsible.

The conclusion being that the ruling complained of was not erroneous, the decree is affirmed.