### GERBER et al. v. SPENCER et al.

(Circuit Court of Appeals, Ninth Circuit. February 13, 1922. Rehearing Denied March 2, 1922.)

#### No. 3749.

1. **Seamen ⬦⟹33—Penalty for delay in paying wages is protected by lien.**

The penalty for delay in paying wages of merchant seamen, imposed by Rev. St. § 4529 (Comp. St. § 8320), was intended to compensate the seamen for the delay in securing payment, and is an incident to their claim of wages proper, protected by the lien for the wages.

2. **Seamen ⬦⟹33—Insufficient tender of wages does not relieve from liability.**

A tender of wages on behalf of a ship, which was insufficient to cover the amount of wages then earned and the penalty for delay in payment already accrued, is not sufficient to release the liability for penalties for delay in paying wages, under Rev. St. §§ 4529, 4530 (Comp. St. §§ 8320, 8322).

3. **Seamen ⬦⟹33—Financial difficulties of owner do not relieve from liability to pay wages and penalties.**

The fact that the owner of vessel was in financial difficulties does not relieve it from the obligation of paying wages when due, including the extra pay.

4. **Seamen ⬦⟹33—Attempted assignment of freight to pay wages held not sufficient to avoid penalties.**

An agreement by a ship's agent to assign to the proctor for seamen a portion of the freight sufficient to cover their wages was not sufficient to

prevent further penalties for nonpayment of the wages, where the shipper had dealt with another agent of the ship as principal and paid the freight to such agent, in whose hands it was attached.

**5. Seamen ⟐⟐24—Rights of other creditors are subordinate to wage claim.**

The rights of other creditors of a vessel are subordinate to the claim for wages as a general rule.

**6. Admiralty ⟐⟐37—Consolidation of independent libels before sale is not necessary.**

Where independent libels were filed, the junior one being by seamen for their wages, it was not illegal for the court to direct a sale of the vessel on such libel, and the payment of the proceeds into the registry of the court without consolidation of the libels, in view of Admiralty Rules, rule 40 (267 Fed. xvi), and District Court Rules, Northern District of California, rule 25.

**7. Seamen ⟐⟐26—Excessive demand for wages held not to prejudice claimants of vessel.**

Claimants of a vessel were not prejudiced by the excessive demand of seamen for wages, where the amount demanded was not disputed by the owner of the vessel, which failed to take steps to meet the demand, and where the libel filed by the seamen correctly stated the wages due.

**8. Seamen ⟐⟐17—Computation of daily wage as one-thirtieth of monthly wage is correct.**

The action of the court in computing the daily wage of the seamen as one-thirtieth of their monthly wage was proper.

**9. Seamen ⟐⟐26—Decree for seamen's wages can provide for payments, if transportation is not furnished.**

Where seamen were entitled to transportation back to their shipping-port, a decree for their wages which provided that, if transportation and subsistence were not furnished, each libelant should receive the amount set opposite his name, was proper in form.

Appeals from the District Court of the United States for the First Division of the Northern District of California.

Libel by Richard J. Spencer and others for wages, transportation, and subsistence, as seamen on the ship Benowa, owned by the Pacific Motorship Company, in which W. E. Gerber, Jr., and the anglo-California Trust Company a corporation, intervened. Decree for the libelants, and interveners appeal. Affirmed, subject to inclusion of amounts thereafter ascertained.

Gerber and the Anglo-California Trust Company appealed from a decree in favor of appellees libelants, for wages and transportation and subsistence against the ship Benowa, and, in the event transportation and subsistence were not furnished, in lieu thereof libelants should receive certain specified sums. In October, 1920, the Pacific Motorship Company, owner of the Benowa and other ships subject to mortgages in favor of the Australian government, contracted with the Australian government, whereby the Anglo-California Trust Company, as trustee, acquired the ships. On January 21, 1921, libelants signed at Baltimore for a voyage from Baltimore via coastwise points on west coast, and final port discharge on west coast, for a period not exceeding three months, and, if crew were discharged on the west coast, transportation was to be paid back to Baltimore. A few days afterwards Houlder, Wier & Boyd, of New York, as principals, but who were in fact agents of the Pacific Motorship Company, contracted with the Navy Department of the United States for the ship to carry coal from Hampton Roads, Va., to Bremerton, Wash. On February 28, 1921, the Benowa, in distress, put into the harbor of San Francisco, and arrangements were made to discharge cargo at San Francisco. The captain, unable to obtain money from the Pacific Motorship Company, obtained provisions on credit to last until about March 9, 1921. When

the provisions were exhausted, the captain and the crew, except the chief engineer, the boatswain, and the chief cook, remained on the ship and performed duties. Demand for wages to pay the crew was refused. During the delay incident to telegraphic communication between the Navy Department at Washington and W. L. Comyn, asking permission to deliver cargo at San Francisco, on March 8, 1921, the commonwealth of Australia brought suit for the foreclosure of the equitable lien created by the contract of October 21, 1920, and asked for a receiver of the Benowa and other ships. On March 9 the Navy Department granted permission to discharge the cargo at San Francisco. On March 10, 1921, libel was filed by McIntosh & Seymour Corporation against the Benowa, and the marshal seized the ship. Other lienholders and other independent libels were filed against the ships, and in personam against the Pacific Motorship Company, and on March 15th these libelants filed suit.

In the libel libelants demand wages from the time of their shipping and sailing to the date of the filing of the libel, and money sufficient to procure passage back to Baltimore and support in the meantime until they could secure such passage, and their passage, including subsistence during the time libelants were traveling on their way home, and also two days' pay per day for each of the days the wages referred to remained unpaid from and after March 15, 1921. Wages calculated to March 15 aggregated $10,395.83. On March 16 libelants' proctor telegraphed the Navy Department at Washington that owners apparently abandoned the ship, crews were unpaid and without support, and notified the Department to withhold from the payment out of freight money amount due crew, $10,395.83, plus amount due captain for his wages and advances. The ship was discharged on March 17. Comyn, agent of the Pacific Motorship Company, testified that his company assigned the freight to proctor of libelants as trustee for the payment of the crew's wages. On the 17th of March the proctor telegraphed to Washington that, upon understanding that out of freight money $12,000 would be paid him as trustee for payment of crew and captain, release would be had of notice sent day before.

On March 26 a receiver was appointed, and on March 29 the proctor for libelants was notified that the freight due on the cargo of coal was paid to Holder, Wier & Boyd of New York, and that the money was attached in the hands of Holder, Wier & Boyd in a suit of Pacific Steam Navigation Company v. Pacific Motorship Company. About April 21, appellant W. E. Gerber, Jr., and Anglo-California Trust Company, the other appellant, negotiated for the purchase of the claim of the Australian government; that claim being a first mortgage. Thereafter an order was made referring the present case to a United States commissioner to take testimony and report findings and conclusions. On April 27, Gerber, Jr., filed an offer to pay libelants $5,609.20, "wages due to libelants in accordance with the shipping articles mentioned in the libel herein, up to and including the 17th day of March, 1921, which sum is herewith deposited with the clerk of this court." Gerber also offered to pay libelants their costs theretofore incurred, and also "to furnish to such libelants as may desire the same transportation in accordance with said shipping articles." Deposit of $5,609.20 was made in the registry of the court. About May 5, 1921, the Benowa was released from the receivership, and on May 10 Gerber was substituted as intervener in place of commonwealth of Australia. On May 14 the District Court rendered its final decision that the libelants were entitled to wages earned under shipping articles, less amount paid, together with the penalty provided by section 4529 of the Revised Statutes as amended (Comp. Stat. § 8320), and also awarding libelants transportation together with subsistence while traveling between San Francisco and their home port.

Pillsbury, Madison & Sutro, of San Francisco, Cal. (Oscar Sutro and Felix T. Smith, both of San Francisco, Cal., of counsel, for appellants.

Ira S. Lillick, of San Francisco, Cal. (J. Arthur Olson, of San Francisco, Cal., of counsel, for appellees.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). The assignments of error call for consideration of several elements of the decree, especially what are called penalties, the provisions for transportation, and the order for the sale of the ship under a junior libel, without consolidating it with earlier and intervening libels under which the ship is held.

[1] Section 4529 of the Revised Statutes, which provides that a master or owner shall pay every seaman his wages within certain days after termination of the agreement under which he was shipped, also provides that a master or owner, who refuses or neglects to make payment in the manner provided "without sufficient cause, shall pay to the seaman a sum equal to two days' pay for each and every day during which payment is delayed beyond the respective periods, which sum shall be recoverable as wages in any claim made before the court." The purpose of the statute, where there is not sufficient cause for refusal or neglect to pay as required, is to secure to the seamen an amount as extra pay by way of compensation for delay. The extra pay is an incident to the claim of wages proper. We adopt the clear statement by Judge Choate in Covert v. British Brig Wexford (D. C.) 3 Fed. 577, 578, 579:

"These statutes are designed for the protection of seamen, to prevent the abuse of withholding their pay, and thereby keeping them in port at expense and out of employment while waiting for a settlement. It is a liquidated indemnity for such enforced expense and delay. It is limited to 10 days, perhaps upon the theory that the summary powers of the admiralty courts, everywhere exercised for the protection of seamen, can, within that time, be brought to bear for their relief, and to encourage diligence on their part in presenting and prosecuting their claims. These protective statutes would be of little or no value to the seamen, if they do not give them a lien on the vessel. A mere right to enforce a personal claim for such small sums against the master or owner would generally be of no value to them; and, if they have a lien, it must, I think, be presumed that it was intended to be a lien in all respects like that for their stipulated wages—one equally beneficial to them." The Amazon (D. C.) 144 Fed. 153.

[2] Argument is made that the "penalty" is imposed for the refusal to pay wages, not for refusal to meet "all demands which seamen may see fit to make." Granting that to be true, it cannot affect a case where there is no sufficient excuse for the refusal or neglect for nonpayment which has resulted in keeping the seamen in port at expense and out of employment while waiting for settlement. The tender made by Gerber was not sufficient to cover wages up to and including March 17, 1921, and in addition thereto a sum equal to two days' pay for each and every day from March 17 up to and including the date of tender, while for the delay in payment after April 27 there was no sufficient cause. Appellants were therefore not released from the liabilities to which they became subject under sections 4529 and 4530 of the Revised Statutes (Comp. St. §§ 8320, 8322). When the demand for wages due was made, libelants were entitled to certain definite sums, as provided by the shipping articles, including wages, transportation, and subsistence during time of transportation, and it does not appear that the demands made were not due.

[3, 4] The circumstance that the Pacific Motorship Company was in financial difficulties did not relieve it from an obligation with respect to claim for wages, including extra pay. The Chas. L. Baylis (D. C.) 25 Fed. 862. The company seems to have regarded effort to pay as not required, because Comyn, as agent, made what he called an "assignment" of some of the freight money to the proctor for libelants. No assignment was introduced in evidence, and the correspondence included in the record made it plain to all concerned that Houlder, Wier & Boyd, of New York, were parties, as principals, to the contract with the Navy Department, and that the freight was paid to them, not as agents, but as principals, and that the Navy Department would recognize only that firm, and would not notice any possible "assignment" as testified to by Comyn. Cases pertinent to this are Cubadist (D. C.) 252 Fed. 662; City of Montgomery (D. C.) 210 Fed. 675.

[5] The general rule that rights of other creditors are subordinate to claim for wages is applicable. The rights of seamen have always been cautiously guarded by statutes and the courts should make their decrees in accord with the spirit and intent of the law to protect the seamen.

[6] There was no error in decreeing a sale of the ship under a junior libel without consolidation with earlier libels, and intervening libels, under which the ship is held. The practice may not be uniform, as pointed out by Hughes on Admiralty (2d Ed.) 397; but where independent libels are filed it is surely not illegal to direct a sale without consolidation and to direct the proceeds of the sale to be paid into the registry of the court. Rule 25, District Court Rules, Northern District of California, and rule 40, Admiralty Rules (267 Fed. xvi), seem to contemplate such procedure.

[7] There is a contention that the demands made were greatly in excess of the sums due. But if the schedule attached to the libel correctly states the wages due under the shipping articles, including transportation and subsistence during transportation, appellants cannot complain. When the seamen demanded their wages, the company did not dispute the amounts claimed by the men. It failed to take steps to meet demands; so did the receiver after he was appointed, for he denied that the libelants were entitled to wages from the day of shipping to the date of filing the libel. It cannot be held that there was an agreement between counsel for libelants and the company, that the penalties should stop running from May 17th. It is evident there was some suggestion to that effect, but the proctor for libelants did not agree to it.

[8] The computations of the penalties in the decree are said to be wrong, but no errors were pointed out to the District Court and appellees contend there are none. In the computation the court took one-thirtieth of the amount of the monthly wage as the basis for ascertaining the daily wage, and awarded double pay for each day that payment has been withheld without sufficient cause. This was proper. But, as there may be some mistake in the computations made, we have concluded to withhold the decree of this court until report may be made in pursuance of an order of this court directing re-examination into the several amounts specified in the decree of the District Court.

The costs of such re-examination shall abide the further order of this court.

[9] We find no objection to the form of the decree, which provides that, if transportation and subsistence are not furnished to libelants upon satisfaction of the provisions of the decree, in lieu thereof each libelant should receive the amount set opposite his name.

Affirmed, subject to inclusion of the amounts to be ascertained.