# THE DICTATOR.

(District Court, E. D. Louisiana. February 10, 1927.)

## No. 18437.

1. **Maritime liens** ⊜⊃30—Coal contract held to put furnisher on notice that ship was chartered, and failure to inquire as to charterer's authority defeated right to lien (Ship Mortgage Act 1920, § 30, subsecs. P, Q, R [Comp. St. §§ 8146¼ooo–8146¼pp]).

Where libelant contracted to supply bunker coal to vessels owned, controlled, or chartered by shipping company, it was put on notice that coal ordered for ship was probably for vessel under time charter, and was bound under Ship Mortgage Act 1920, § 30, subsecs. P, Q, R (Comp. St. §§ 8146¼ooo–8146¼pp), to use due diligence to ascertain terms of such charter with respect to shipping company's authority to bind ship, and failure to make such inquiry defeated right to lien against ship, where charter did not authorize charterer to bind ship.

2. **Towage** ⊜⊃9—Towage of vessel from drydock to wharf on captain's orders held to entitle furnisher to maritime lien (Ship Mortgage Act 1920, § 30, subsecs. P, Q, R [Comp. St. §§ 8146¼ooo–8146¼pp]).

Towage service, from dry-dock, where vessel had been for cleaning and painting of bottom for account of owner, to wharf, furnished on captain's orders, *held* to entitle furnisher to maritime lien, notwithstanding failure to inquire as to ownership or terms of charter party under Ship Mortgage Act 1920, § 30, subsecs. P, Q, R(Comp. St. §§ 8146¼ooo–8146¼pp).

In Admiralty. Libel by W. G. Coyle & Co., Incorporated, against the steamship Dictator. Decree for libelant in part, and in part for claimant.

Lemle, Moreno & Lemle, and Selim B. Lemle, all of New Orleans, La., for libelant.

Terriberry, Young, Rault & Carroll and Richard B. Montgomery, Jr., all of New Orleans, La., for respondent.

BURNS, District Judge. Libelant brings this suit against the Norwegian steamship Dictator, claiming $3,124.10 for bunker coal and $40 for towage services performed by its tug Sipsey. The claim involves two items of coal; the first being delivered on December 23, 1925, and consisting of 238 tons at $5.65 per ton, or a total of $1,344.70, and the second, on January 20, 1926, of 287 tons at $6.20 per ton, for a total of $1,779.40.

The libelant, W. G. Coyle & Co., Incorporated, a New Orleans concern, had a written contract with the Orr Fruit & Steamship Company, Incorporated, whereby it undertook " * * * to supply all the bunker coal that Orr Fruit & Steamship Company, Inc., may require at the port of New Orleans for the use of its steamers, also for any

steamers it may own, control, or time charter, during the life of this agreement, estimated to be minimum of 1,500 tons, with maximum of 6,000 tons."

Each delivery of coal was ordered by Orr Fruit & Steamship Company, Incorporated, and was receipted for by the chief engineer of the boat when placed aboard.

The Norwegian Steamship Dictator was being operated by the Orr Fruit & Steamship Company, Incorporated, under a time charter. This charter contained a provision that the charterer was to pay and provide for all coal and port charges.

It seems that, when the libelant, W. G. Coyle & Co., Incorporated, found that the charterer, Orr Fruit & Steamship Company, Incorporated, was insolvent, it libeled the Norwegian vessel Dictator upon the theory that it had a lien for the coal furnished and for an item of towage.

The claimant contends that the whole question of liens created for supplies and towage furnished the vessel is now governed by the Ship Mortgage Act of 1920, § 30, subsecs. P, Q, and R. (Comp. St. §§ 8146¼ooo, 8146¼p, 8146¼pp), which read as follows:

"(P) *Maritime Liens for Necessaries.*— Any person furnishing repairs, supplies, towage, use of dry docks or marine railway, or other necessaries, to any vessel, whether foreign or domestic, upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by suit in rem, and it shall not be necessary to allege or prove that credit was given to the vessel.

"(Q) *Who May Procure Necessaries.*— The following persons shall be presumed to have authority from the owner to procure repairs, supplies, towage, use of dry docks, or marine railway, and other necessaries for the vessel; the managing owner, ship's husband, master, or any person to whom the management of the vessel at the port of supply is entrusted. No person tortiously or unlawfully in possession or charge of a vessel shall have authority to bind the vessel."

"(R) *Want of Authority to Procure Necessaries.*—The officers and agents of a vessel specified in subsection Q shall be taken to include such officers and agents when appointed by a charterer, by an owner pro hac vice, or by an agreed purchaser in possession of the vessel; but nothing in this section shall be construed to confer a lien when the furnisher knew, or by exercise of reasonable diligence could have ascertained, that because of the terms of a charter party, agreement for sale of the vessel, or for any other rea-

son, the person ordering the repairs, supplies, or other necessaries was without authority to bind the vessel therefor,"

—and cites as authority the case of Curacao Trading Co. v. Bjorge, 263 F. 693 (C. C. A. 5th), and The Capitaine Faure (D. C.) 7 F. (2d) 131, 1924 A. M. C. 1137, to the effect that, where a charterer has no authority to bind a ship for coal, under provision in the charter party that he is to pay for all coal needed by the ship, he has no authority to impose a lien upon the vessel.

The charter party in this case provides that "the charterers shall pay and provide for all the coal, port charges, pilotages, agencies and commissions. * * * *"

Claimant contends further that the libelant could have ascertained, by the exercise of reasonable diligence, that the charterer was without authority to bind the vessel for coal; that he did not use due diligence in ascertaining the authority of the charterer, Orr Fruit & Steamship Company, Incorporated, and did not even inquire as to whether or not the Orr Fruit & Steamship Company, Incorporated, was owner or charterer, or otherwise inquire into its authority with respect to the vessel.

During the taking of the testimony, the vice president and general manager of W. G. Coyle & Co., when asked whether he had inquired of the Orr Fruit & Steamship Company as to whether it owned or controlled or time chartered the steamship Dictator, said: "We only handle accounts of that sort in a general way with the Orr Fruit & Steamship Company, just as we would with any other regular and good customer. As a matter of fact, we felt that we should not require the exhibition of each specific charter, or burrow into it too much. It would be prejudicial to our business, and we did not make a practice in insisting upon an exact showing as to the ownership or the type of charter for that ship. * * * We only asked what they proposed doing with it, and they said they wanted it for bunkers. * * * *"

His further testimony indicated that he feared that the Orr Fruit & Steamship Company might have regarded his company as a furnisher of supplies as being too inquisitive. He further testified that he did not know that the agency in New Orleans for the owners of the Dictator was Page, L'Hote & Co., ship brokers, and made no inquiry at all, either of them or of the charterers.

Under these circumstances, the courts have held uniformly that the due diligence required by the subsection R of the statute

had not been exercised; that there is an affirmative duty placed upon one supplying a ship to ascertain, or at least attempt to ascertain, whether the person operating the ship has the authority to bind the ship. See The Palnatoke, No. 17164 of the docket, in an opinion dated November 16, 1925; United States v. Carver, 260 U. S. 482, 43 S. Ct. 181, 67 L. Ed. 361; The Westhaven (D. C.) 297 F. 534; The Admiral Goodrich (C. C. A.) 288 F. 362; The Ville de Djibouti (D. C.) 295 F. 869; The Susquehanna (D. C.) 3 F.(2d) 1014.

[1] In this case, the hereinabove quoted excerpts from the coal contract between libelant and the charterer indicate plainly that the Orr Fruit & Steamship Company were operating vessels generally, whether owned by them or under charter, whereby the libelant was put on notice that it was very probably ordering coal for vessels under charter. The duty was thereby imposed upon libelant to use due diligence in ascertaining the terms of such charter party with respect to the authority of the charterer to bind the vessel, notwithstanding which the libelant coal company's manager testified that the Orr Fruit & Steamship Company had always paid the bills, and never told him that it was without authority to bind the ship or to render the bills in any other way than to make them out against the ship and send them to the said company; that all he knew about the Orr Fruit & Steamship Company was that they were a reliable firm, and that nothing ever occurred to arouse his suspicions; and, finally, that he refrained from making any inquiries whatever relative to the Orr Fruit & Steamship Company's connection with the steamship Dictator, for the reason that reputable firms resented supplymen poking their noses into their business; and that he supposed everything was all right until the payment of the last two bills was not made, when for the first time he discovered that things were not as they appeared to be, and he was told that the Orr Fruit & Steamship Company had no authority to bind the steamship Dictator.

Certainly nothing could be clearer than that the libelant coal company deliberately extended credit to the Orr Fruit & Steamship Company at its own peril; that it is to be charged with knowledge that the Orr Fruit & Steamship Company did not have authority to bind the ship; that it did not supply the coal on the credit of the vessel, and therefore there is no lien on the vessel.

It is not sufficient that a putative lienor testify that he had no knowledge of the true situation, where, upon the face of his contract, he is advised that the coal contracted for is to be used by the purchaser "for any steamers it may own, control, or time charter."

Libelant cites from the Oceana Case (C. C. A.) 244 F. 80, to the effect that the burden lay upon the claimant to show some fact or circumstance which would put it on inquiry. Certainly the claimant need not point to more than the above-quoted clause from the contract for that purpose.

[2] The item of towage seems to be upon a different footing. From the testimony it appears that, although the tug Sipsey is owned by the libelant, its towage service was furnished directly to the vessel upon the order of the captain; that the steamship Dictator had been in dry-dock for the cleaning and painting of her bottom for account of the owner; and that the towage from the dry-dock to a wharf within the port of New Orleans was ordered by the captain, and for this service the regular charge of $40 was made. Therefore this item of $40 is properly a charge against the ship for account of the owners.

Accordingly a decree may be entered in favor of claimant dismissing libelant's claim for the item of coal, and a further decree in favor of libelant and against the claimant in the sum of $40 for the item of towage, with recognition of its lien against the vessel therefor, each party to pay its own costs.