### THE S. W. SOMERS.

### THE BERTIE E. TULL.

District Court, D. Maryland. September 21, 1927.

Nos. 1402, 1403.

1. **Maritime liens ⬅28—Conditional vendee in possession of vessel cannot create lien for supplies and repairs, in face of clause in agreement denying such authority (Maritime Lien Act 1910, as amended by Merchant Marine Act 1920, § 30, subsecs. P, Q, R [46 USCA §§ 971–973]).**

Under Maritime Lien Act 1910, as amended by Merchant Marine Act 1920, § 30, subsecs. P, Q, and R (46 USCA §§ 971–973 [Comp. St. §§ 8146¼ooo–8146¼pp]), a conditional vendee, in possession of a vessel under a valid conditional sales agreement reserving title in the vendor, cannot create liens for supplies and repairs, when a clause in the agreement stipulates that such vendee has no authority to do so.

2. **Maritime liens ⬅28—Prior to Maritime Lien Act, as amended by Merchant Marine Act, vendee could create liens on vessel for wages, supplies, and repairs, despite contrary agreement (Maritime Lien Act 1910, as amended by Merchant Marine Act of 1920, § 30, subsecs. P–T [46 USCA §§ 971–975]).**

Prior to Maritime Lien Act 1910, as amended by Merchant Marine Act 1920, § 30, subsecs. P–T (46 USCA §§ 971–975 [Comp. St. §§ 8146¼ooo–8146¼q]), liens on vessels for wages, supplies, and repairs could be created by vendee, in spite of agreement to the contrary.

3. **Maritime liens ⬅28—That some of supplies were furnished vessel in hands of conditional vendee prior to recordation of conditional sales agreement does not alter duty to ascertain vendee's authority.**

The fact that some of supplies furnished a vessel in the hands of a conditional vendee, having no authority to create a lien for supplies or repairs, were furnished prior to the recordation of the sales agreement, does not alter the duty of the supply men to make inquiry, particularly where agreement provides that certified copy thereof shall be carried with the ship's papers.

4. **Seamen ⬅27(1)—Seamen on vessel in hands of conditional vendee are entitled to lien for wages, notwithstanding clause denying vendee authority to create liens (Maritime Lien Act 1910, as amended by Merchant Marine Act 1920, § 30, subsecs. P–T [46 USCA §§ 971–975]).**

Seamen on vessel in hands of vendee under conditional sales agreement are entitled to a lien for wages, notwithstanding a clause in such agreement providing that vendee has no authority to create liens for wages, supplies, or for repairs, and notwithstanding Maritime Lien Act 1910, as amended by Merchant Marine Act 1920, § 30, subsecs. P–T (46 USCA §§ 971–975 [Comp. St. §§ 8146¼ooo–8146¼p]).

5. **Seamen ⬅27(11)—Seaman's release of lien on receipt of part payment of wages due held not binding, after vendee's check for balance of wages was not paid.**

Where seaman, asserting lien for wages against vessel in hands of vendee, gave vendor a release in full on receipt of balance of wages due, in reliance on vendee's promise to make good a check previously given for part of wages, *held*, the release so given was not binding, where vendee's check was not made good.

6. **Release ⬅15—Seamen's releases will be scrutinized with particular care.**

Admiralty courts will scrutinize, with particular care, releases given by seamen.

In Admiralty. Libel by the American Oil Company against the power boat S. W. Somers, and libel by the William H. Whiting Company against the power boat Bertie E. Tull, consolidated and heard together. Decrees in accordance with opinion.

G. Arch Parke, Marbury, Gosnell & Williams, and William Hettleman, all of Baltimore, Md., for libelant American Oil Co.

Marbury, Gosnell & Williams, George T. Mister, G. Arch Parke, and Benson, Nock, Rowe & Cullen, all of Baltimore, Md., for libelant William H. Whiting Co.

Lord & Whip, of Baltimore, Md., for respondents.

COLEMAN, District Judge. [1] The question presented by these two cases, which were consolidated and heard together, is whether the vendee, in possession of a vessel under a valid conditional sales agreement, with reservation of title in the vendor, can create liens thereon for wages, supplies, and repairs, when a clause in the agreement stipulates that the vendee has no authority so to do. Each vessel was sold under a similar agreement, which was duly recorded. Clause 4c thereof is the pertinent one, and is as follows: "The buyer shall not suffer nor permit to be continued any lien or charge having priority to or preference over the title of the seller in the vessel or any part thereof. * * * "

[2] Prior to the Maritime Lien Act of 1910 as amended by the Merchant Marine Act of 1920 (41 Stat. 1005 [46 USCA §§ 971–975; Comp. St. §§ 8146¼ooo–8146¼q]), such liens could be created in spite of agreement to the contrary. The George Farwell (C. C. A.) 103 F. 882; The Thomas W. Rogers (C. C. A.) 207 F. 69. The act of 1910, as amended, provides (subsection P [46 USCA § 971; Comp. St. § 8146¼ooo]) that a lien shall exist for repairs, supplies, etc., when ordered by the owner of the vessel or one authorized by him, and such lien is enforceable by an action in rem. Subsection Q (46 USCA § 972; Comp. St. § 8146¼p) defines "authorized person" as owner, ship's husband, master, or any person to whom management of the vessel at the port of supply is entrusted. Subsection R (46 USCA § 973; Comp. St. § 8146¼pp) provides, among other things, that "nothing in this section shall be construed to confer a lien when the furnisher knew, or by exercise of reasonable diligence could have ascertained, that because of the terms of a charter party, *agreement for sale of the vessel,* or for any other reason, the person ordering the repairs, supplies, or other necessaries was without authority to bind the vessel therefor." (Italics inserted.)

In the leading case of United States v. Carver, 260 U. S. 482, 43 S. Ct. 181, 67 L. Ed. 361, the foregoing provisions were construed as placing the furnishers upon inquiry as to the authority of the person in possession of the vessel, thus changing the law as it had existed prior to the act. The court said (260 U. S. 489, 490, 43 S. Ct. 182): "Here the primary undertaking was that 'the charterers will not suffer nor permit to be continued any lien,' etc. We read this as meaning, will not suffer any lien nor permit the same to be continued. Naturally there are provisions for the removal of the lien, if in spite of the primary undertaking one is imposed or claimed. But the primary undertaking is that a lien shall not be imposed. We are of opinion that the libelants got no lien upon the Clio and a fortiori that the Morganza was free." It is to be noted that the language of clause 4c of the present contracts is identical with the language under construction in the Carver Case.

The foregoing construction of the act has been frequently applied in this circuit. Deibert Barge Building Co. v. United States (C. C. A.) 289 F. 805; United States v. Voelp (C. C. A.) 296 F. 119; Standard Oil Co. v. United States (C. C. A.) 1 F.(2d) 961; Frey & Son v. United States (C. C. A.) 1 F.(2d) 963; The Liberator (C. C. A.) 5 F.(2d) 585. Likewise, the same reasoning has been followed in cases involving a charter limiting the power of the charterer. The Capitaine Faure (D. C.) 5 F.(2d) 1008; The Dictator (D. C.) 18 F.(2d) 131.

[3] All of these decisions deal with supplies and repairs, and would seem to leave no doubt of the law, where they are furnished under conditions such as exist in the present case. There is no proof that any of the claimants has satisfied the rule of diligent inquiry imposed upon him by the act. The fact that some of the supplies may have been furnished prior to recordation of the conditional sales agreement does not alter the duty to inquire as provided. Note that the contract provides that a certified copy of the agreement shall be carried with the ship's papers, and there is no evidence that such was not done, or that libelants made any inquiry about them.

[4] Turning to the question of seamen's wages, which are not embraced in the act, the court is of opinion that a different rule controls, although no case has been cited to the court, nor has it found any, directly decisive of the precise question arising since the passage of the act. While it has been held that a seaman has no lien for wages when the master by whom he has been employed is wrongfully in possession of the vessel, and thus has no authority to incur liens (The General McPherson [D. C.] 100 F. 860), and similarly, if it can be shown that the seaman actually relied upon the contract with his

employer rather than upon the credit of the vessel, he has no lien (White v The Emma [C. C.] 37 F. 703), nevertheless, the provisions of a charter party have been held not to deprive a seaman of his right to a lien on the vessel for his wages, even though the charter party prohibits the charterer creating on the vessel any "bills, liens, or incumbrances of any nature whatsoever" (The Gen. J. A. Dumont [D. C.] 158 F. 312, and cases cited). The same rule has been applied, even though the seaman knew of the contract with the charterers and hired to them. The International (D. C.) 30 F. 375; The L. L. Lamb (D. C.) 31 F. 29.

In the Dumont Case, which is a decision by Judge Waddill, when District Judge for the eastern District of Virginia, it is said (page 314): "The seaman is entitled to a lien upon the Dumont for the amount of his wages, and should not be deprived of the same, or denied the right of recovery against her, because of any provisions contained in the charter party. The claim is for labor performed in the ship's navigation, and the maritime lien in his favor is given by law, based upon the necessity of the service thus rendered by one of this class, favored by law because of the hazards they encounter and hardships they endure in the interest of the ship and her owners and the furtherance of commerce."

The situation presented by the above decisions is so analogous to that arising under the conditional sales agreements in the present cases as not to warrant, in the opinion of the court, a different rule, especially in view of the favored position in which seamen's wages are universally regarded in admiralty. However, respondent insists that the situation in the present case is to be treated differently, because of the fact that libelant had already been paid part of his wages by the owner, and at that time had given the owner what purported to be a complete release of the vessel from all further claims, and that libelant cannot now reassert a lien which he had in fact surrendered.

[5] In reply to this argument libelant appears to admit receipt of the part payment and the giving of the release, but asserts that at the time he did so he had assurances from the conditional vendee that his check for the balance (being the amount of the present claim), which had been returned unpaid, would be made good, and he therefore saw no occasion to include the amount of it in his settlement with the owner; that when the conditional vendee, however, failed to make the check good, he (libelant) became entitled to assert his lien for the amount of the paid check, since that item had never been within the contemplation of the release. [6]. The court is prepared to uphold libelant in this contention, since, granting that he appears to have acted in an unbusinesslike manner, nevertheless there is no clear proof of bad faith, and also since it is the rule of admiralty courts to scrutinize, with particular care, releases given by seamen. The Tug Ross Coddington (D. C.) 1 F.(2d) 326, 1924 A. M. C. 615; Riegel v. Higgins (D. C.) 241 F. 718. See, also, Gant v. Henry S. Grove, 22 F.(2d) 444, this Court. Furthermore, on the facts as presented, it does not appear that the owner has precluded himself from obtaining reimbursement from the conditional vendee in an action at law.

A decree will therefore be entered for the libelant, Wichert, for the amount of wages claimed. The other libels are dismissed.