## THE CHESTER.

District Court, D. Maryland.   March 8, 1928.

### No. 1481.

**1. Maritime liens ⬤⇒28—Repairman's libel against vessel and owners held dismissed, where repairs were made for charterer, who was without authority to incur liens (Maritime Lien Act [46 USCA §§ 971–975]).**

Libel against vessel and owner for repairs made by libelant for charterer will be dismissed, where copy of charter, stipulating that charterer had no authority to incur liens, was placed aboard vessel, since libelant, by not inquiring as to terms of charter, did not satisfy affirmative burden of inquiry imposed on repairman under Maritime Lien Act (46 USCA §§ 971–975; Comp. St. §§ 8146¼ooo–8146¼q).

**2. Seamen ⬤⇒27(9)—Charter provision that charterer was unauthorized to incur liens held not to affect seamen's right to wages, accorded superiority in admiralty.**

Provision of charter, stipulating that charterer had no authority to incur liens, *held* not to affect right of seamen to their wages, since such wages are accorded superior position in admiralty.

**3. Seamen ⬤⇒20—Chief engineer held entitled to full amount of claim for wages, notwithstanding damage to boiler when he used salt water on master's authorization.**

In libel against vessel and owner, chief engineer *held* entitled to full amount of wages claimed, with subsistence, notwithstanding damage done to vessel's boiler by use of salt water, where claimant testified that he only resorted to such expedient on authorization of master when vessel ran out of fresh water on trip.

**4. Seamen ⬤⇒18—In libel against vessel and owner for wages of seamen employed by charterer, wage claimants held entitled to statutory penalties; "master or owner;" "sufficient cause" (46 USCA § 596).**

In libel against vessel and owner for wages of seamen employed by charterer, who absconded, wage claimants *held* entitled to penalties, under Rev. St. § 4529 (46 USCA § 596; Comp. St. § 8320), since failure of charterer to pay was "without sufficient cause," notwithstanding financial inability, and "master or owner," within statute, refers to person primarily responsible to seamen for wages; that is, person who employs them.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Sufficient Cause.]

**5. Seamen ⬤⇒27(9)—Seamen have lien on vessel for statutory penalties for delayed payment of wages (46 USCA § 596).**

Seamen have lien against vessel for penalty for delayed payment of wages, under Rev. St. § 4529 (46 USCA § 596; Comp. St. § 8320), since money payable under such statute is payable essentially as wages, and not penalties, and seamen have lien on vessel for wages.

**6. Seamen ⬤⇒18—In libel against ship and owner for wages of seamen employed by charterer, statutory penalty for delayed payment held limited to 15 days from time libels were filed (46 USCA § 596).**

In libel against vessel and owner for wages of seamen employed by charterer, penalties for delayed payment under Rev. St. § 4529 (46 USCA § 596; Comp. St. § 8320), *held* limited to period of 15 days from time libels were filed, in view of circumstances; courts having certain discretionary power to limit penalties, notwithstanding seeming rigidity of statute.

In Admiralty. Libel by James H. Ellis against the steamship Chester and owner, in which C. C. Culpepper and others intervened as libelants. Libel of James H. Ellis dismissed. Claims of intervening libelants for wages allowed, with penalty.

Lewis W. Lake, of Baltimore, Md., for libelant.

John H. Skeen, of Baltimore, Md., for respondent.

WILLIAM C. COLEMAN, District Judge. The question in this case is as to the validity and amounts of lien claims for repairs, and for seamen's wages and subsistence, against the steamer Chester, alleged to have arisen while the vessel was under charter to the Southern Maryland Navigation Company. The Chester Shipping Company, the vessel's owner, was at the time in receivership.

The charter was of the bare boat variety, for a six-months period, at $833.33 per month. It began in September, 1925, when the charterer hired a crew at various wage scales and placed the vessel in commission. She made a number of short voyages in Maryland waters, but, the charterer soon being in default as to the charter hire, receivers reclaimed the vessel on December 18, 1926, and discharged the crew. Thereupon libels were filed by the crew, 10 in number, for unpaid wages, and penalties under section 4529 of the Revised Statutes (46 USCA § 596; Comp. St. § 8320). The claims of only four of the crew, however, are now in dis-

pute. The repairs, for which a libel was also filed, were rendered to the vessel in October and November, 1926.

[1] Turning first to the libel of Ellis for repairs, the court is of opinion that this must be dismissed. The charter expressly stipulated that the charterer had no authority to incur liens, as evidenced by the following provisions:

"It is understood and agreed that the charterer, or the master, officers, or crew of said vessel appointed by said charterer, shall not have authority to create any lien, maritime lien, or any debt or charge against the said steamer. The said charterer and the said master and officers shall have no right, power, or authority to create, incur, or permit to be imposed upon said steamer any liens whatsoever, and that the said charterer shall cause to be carried a true copy of the charter upon said steamer, with said steamer's papers, and on demand shall exhibit the same to any person having any business which could or might give rise to any lien thereon. The charterer further agrees that, if any lien or claim is asserted against said vessel on account of any debt incurred by said charterer, in the operation of said vessel under and during the term of this charter, or any renewal thereof, the charterer will immediately pay such debt, or in case of arrest or attachment of said vessel it will immediately bond the said vessel and secure her release from attachment; it being understood and agreed that all expenses of whatsoever kind or description incident to the physical operation and navigation of said vessel while under this charter shall be borne and paid for by the charterer."

A copy of the charter was placed aboard the vessel at the beginning of the hire. There is nothing to show that it did not remain there continuously during the period in question. Ellis made no request for the ship's papers, but relied on the apparently voluntary statement of the then master, Williams, who was for all intents and purposes the Southern Maryland Navigation Company, the charterer, that he was *buying* the vessel. Ellis did not even inquire as to the terms of the charter, which, it seems, was the reasonable thing to do. His testimony as to his inquiry is, on the whole, very vague, and the court does not think, therefore, that it satisfies the affirmative burden of inquiry imposed upon every repairman under the Maritime Lien Act (46 USCA §§ 971–975; Comp. St. §§ 8146¼ooo–8146¼q). United States v. Carver, 260 U. S. 482, 43 S. Ct. 181, 67 L. Ed. 361. See, also, The S. W. Somers (D. C.) 22 F.(2d) 448, and cases cited.

[2] Turning to the wage claims, the provisions of a charter cannot affect the right of seamen to their wages. The S. W. Somers, supra. Such wages are accorded a superior position in admiralty. The General J. A. Dumont (D. C.) 158 F. 312. The wage claimants whose liens are disputed assert that they served for a certain specified time and for certain specified wages, at the instance of the charterer, as purser-cook, fireman, chief engineer, and watchman, respectively. The claims of the purser-cook for a month's wages, and of the fireman for a fraction of a month's wages, are contested on the ground that the master denied having hired these persons. However, their own testimony is the more positive and convincing. Therefore the doubt will be resolved in their favor, and their claims allowed, including subsistence.

[3] With respect to the chief engineer, Kane, the receivers deny the correctness of his claim, $271.48, being for 48 days at the rate of $185 per month, and also urge a counterclaim for damage done by Kane to the vessel's boiler by the use of salt water. Kane testified that he only resorted to this expedient upon the authorization of the master, Williams, when the vessel ran out of fresh water on one of her trips. The entire testimony on this point is not sufficient to convince the court that the damage was in fact due to negligence or improper conduct on the part of Kane. The court must, therefore, disallow the counterclaim, and, since this appears to be the only objection seriously urged in reduction of his wages as claimed, their full amount will be allowed, with subsistence.

Lastly, we come to the claim of Culpepper for services as watchman, $72 for 48 days, on the basis of $45 per month. In The Herdis, 22 F.(2d) 304, this court pointed out the distinction between watchmen's services which are not of a maritime nature, and which give no rise to a lien, and those which are maritime and do give rise to a lien. While the testimony of this claimant is very meager as to just what services he performed, the vessel was in commission at the time, and the major portion of his claim is not disputed. Therefore the court feels constrained to construe the doubt in his favor, and to allow the claim in full, with subsistence.

[4] The final question is whether the wage claimants are entitled to the penalties under section 4529 of the Revised Statutes, which provides as follows:

"The master or owner of any vessel mak-

ing coasting voyages shall pay to every seaman his wages within two days after the termination of the agreement under which he was shipped, or at the time such seaman is discharged, whichever first happens; * * * and in all cases the seaman shall be entitled to be paid at the time of his discharge on account of wages a sum equal to one-third part of the balance due him. Every master or owner who refuses or neglects to make payment in the manner hereinbefore mentioned without sufficient cause shall pay to the seaman a sum equal to two days' pay for each and every day during which payment is delayed beyond the respective periods, which sum shall be recoverable as wages in any claim made before the court; but this section shall not apply to masters or owners of any vessel the seamen of which are entitled to share in the profits of the cruise or voyage." 46 USCA § 596. .

Under the above provision, double pay is being claimed for all of the aforenamed claimants for a three-months period, arbitrarily fixed, because shortly after such period they had obtained other employment. The present libels were all filed December 18, 1926. There is no evidence that any of the libelants were dilatory in any stage of the proceedings. In fact, they have endeavored to prosecute their claims speedily, and such delays as have occurred are not chargeable to them, but primarily to an extremely congested state of the court's docket.

The charterer had evidently assumed an enterprise which was not profitable. The fact that he was, from the first, unable to pay the charter hire and wages as they accrued, indicates that he had embarked upon a rather speculative venture. Then, at the end, he absconded, leaving the seamen upon the vessel without any pay, subsistence, or instructions as to the future. Upon this state of facts, the court feels that the failure on the part of the charterer to pay was "without sufficient cause," as that phrase is understood in the statute; that is to say, there was financial inability, but unaccompanied by any circumstances warranting a finding of sufficient cause. As was said in The Trader (D. C.) 17 F.(2d) 623, 626, showing that mere financial straits are not enough:

"The counsel for the seamen also argues that in any event there exists in this case nothing more than financial difficulties, and that financial difficulties do not excuse the failure to pay wages. * * * In this I am inclined to agree with them, and, if this case presented merely a question of financial difficulties, I should be disposed to allow the

double wages. It is the duty of the master or owner to take steps to insure the prompt payment of wages, and, if financial difficulties were allowed to be a sufficient excuse, it would in many cases practically take away from the seamen their rights under the statute."

See, also, Gerber v. Spencer (C. C. A.) 278 F. 886.

A distinction is made in the decisions as to the degree of financial inability. Thus in The Acropolis (D. C.) 8 F.(2d) 110, the fact that a petition in bankruptcy had been filed against the owner of the vessel, and a receiver appointed, was held sufficient cause to prevent imposition of penalties. Similarly, in The President Arthur (D. C. S. D. N. Y., March 29, 1926, 25 F.(2d) 1002, a receivership in equity was held to have the same effect. These decisions are relied upon by the respondent in support of its claim that penalties should not be imposed, because it, the respondent—that is, the owner of the vessel—was at the time in question, and still is, in receivership. However, the court is of opinion that these decisions, sound as they are on the facts to which they apply, are nevertheless not controlling in the present case, because we have the further fact that the wage liens were not created, as in those cases, by the true owner, but by the charterer.

[5] It is well established that money payable under section 4529 of the Revised Statutes is payable essentially as wages, and not penalties. Gerber v. Spencer, supra; Buckley v. Oceanic Steamship Co. (C. C. A.) 5 F.(2d) 545. Further, it is axiomatic that seamen have a lien upon the vessel for their wages. Thus it follows that they must also have a lien for any and all sums payable under section 4529, and not merely a right to enforce a personal claim against the master or owner. The Nika (D. C.) 287 F. 717; The Great Canton (D. C.) 299 F. 953; Covert v. Brig Wexford (D. C.) 3 F. 577. This being true, let us consider the exact facts in the present case. The vessel was in the hands of a charterer, with authority, as we have seen, to cause wage liens to be imposed upon her, the charter party to the contrary notwithstanding. He thus, being the source of such liens, must likewise be the source of the so-called penalties; that is, for everything payable under the statute. By virtue of established principles, previously discussed, there was not sufficient cause for the charterer's refusal to pay.

The words of the statute, "master or owner," must refer to the person who is primarily responsible to the seamen for their

wages—that is, the person who employs them; and in the present case that person is the charterer or his master, who happen to be one and the same person. If this were not so—that is, if these words referred only to the true owner of the vessel or his master, regardless of the source of employment—there could never be any penalties imposed in a situation such as the present one, where the charterer (or his master) engages the seamen, because, (1) the charterer (or his master) would not be embraced within the terms of the statute; and (2) neither the true owner nor his master has played any part in the employment. Therefore the seamen, through no fault of their own, would be entirely cut off from the very remedy which the statute intended to give them.

That the claim is not personal against the true owner is further supported by the following considerations: Granting that both the seamen and the true owner may have a remedy in personam over against the charterer, if he has violated the statute, such remedy is practically, though not theoretically, worthless, if the charterer is irresponsible. The court must balance, therefore, the interests of the owner and those of the seamen. The former are simply that his vessel shall not be subjected to claims which he has not caused or permitted to arise. The latter are predicated upon the exceptional favor accorded to seamen as wards of the admiralty. There is the further fact in favor of the seamen that they are in no way at fault, whereas the owner is, at least in a sense, somewhat at fault for having intrusted his vessel to a charterer not financially responsible, and who he must know, because ignorance of the law is no excuse, can impose liens for seamen's wages, regardless of provision in the charter to the contrary. Fairness, therefore, seems to favor the seamen, and to leave the owner of the vessel, rather than the seamen, to a remedy in personam which is admittedly of dubious value.

[6] It having been concluded, therefore, that all of the various wage claimants are entitled also to the benefit of the penalty provision of the statute, the extent of the penalties still remains to be determined. Where diligence has not been practiced by seamen in instituting suit and in subsequent proceedings, it has been held that the statutory penalties may properly be limited to a date prior to that of the decree. Mystic S. S. Co. v. Stromland (The Walter D. Noyes) 20 F.(2d) 342 (C. C. A.). In the present case all of the wage claimants appear to have obtained other employment within approximately three months of their discharge, and for this reason are not claiming penalties in excess of this period. However, the court feels that the unusual facts in the present case warrant even further limitation, and that the same is consistent with the policy announced by the Circuit Court of Appeals for this Circuit in the Noyes Case, supra, which policy appears to rest upon the principle that, in spite of the seeming rigidity of the statute, there is still left to the courts certain discretionary power to limit the penalties.

Although the reasons given in the Noyes Case are necessarily different from those here relied upon, the exercise of discretion seems to be equally justifiable; that is to say, in the Noyes Case penalties were limited to a 10-day period, because the court found the parties to the suit lacking in diligence with respect to the institution of the suit and subsequent pleadings. Here there is no such dereliction; yet the framers of the statute should not be presumed to have intended to impose a *double* hardship upon the vessel, and therefore upon her owner, merely because the charterer is unable or unwilling to meet an obligation which it incurred directly as its own, and which, if the owner had incurred, could have been escaped by reason of the owner's insolvency. That is to say, it does not seem reasonable to put upon the statute a construction which would accord to seamen sums greatly in excess of the face value of their wages, especially when this would defeat the very object of the statute, which is to penalize delays in paying seamen their wages by those who have employed them, but not to impose penalties, much less actual hardships, upon those not privy to the employment. The latter would result from an allowance of double pay for any considerable length of time. For example, the claim of the chief engineer, Kane, herein allowed, is for $271.48, on the basis of $185 a month. Over 14 months have elapsed since the filing of his libel. On the basis of two days' pay for every day's delay, the penalties alone would amount to more than $5,000, and, even if we should adopt the compromise proposal of three-months limitation, the penalties would still exceed $1,000.

Therefore the court concludes that to limit the running of the penalties to 15 days from the time the libels were filed is entirely reasonable and proper under the circumstances. A decree will be signed in accordance with the above.